UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

91

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                        Case No. 17-20259

JAMES LAWRENCE,                    Hon. Victoria A. Roberts

Defendant.

DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S ORDER
DENYING DEFENDANTS RENEWED MOTION FOR COMPASSIONATE RELEASE

Defendant, James Lawrence, pro-se hereby moves the Court in the above entitled cause for reconsideration of Court's order denying defendants renewed motion for compassionate release and states the following in support thereof:

The Court denied Lawrence's renewed motion for compassionate release on October 7, 2020 (Doc. 102).

Lawrence respectfully feels as if the Court has overlooked a few items and possibly has misconstrued the applicable law as it relates to Lawrence's claims. Moreover, Lawrence has just become aware of numerous pieces of evidence establishing inconsistencies on the FCI Elkton Administration reporting to the Courts and public on the day-to-day operations of this institution along with actual perjured testimony given to the Courts by the Health Service Administrator (HSA).

(1)

## A.

First off, Lawrence respectfully reminds this Court that the United States Sentencing Guidelines (USSG) are "advisory only", and have been since the U.S. Supreme Court made that determination in <u>United States v. Booker</u>, 543 U.S. 220, 245, 125 S.Ct. 778, 160 L.Ed. 621 (2005).

As important, just before this Court's ruling (Doc.102) the Second Circuit Court of Appeals in <u>United States v. Zullo</u>, No. 19-3218 (2nd Cir. Sept. 25, 2020) ruled "USSG § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants. Application Note **1** (D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Therefore this Court absolutely is not constrained by USSG § 1B1.13 and may consider Lawrence's issue of the law change ("<u>Havis</u>") disqualifying him as a "career offender", extraordinary and compelling and grant compassionate release.

Furthermore, this Court stated that it was "not aware of any cases in the district in which a defendant was released solely because of obesity" (SEE: Doc.107). Lawrence respectfully directs this Court to review Hon. Judith E. Levy's Opinion and Order releasing defendant, Joseph James Roe in Eastern District of Michigan, Case No. 15-cr-20581 (Doc. 374). Judge Levy released Mr. Roe solely connected to obesity[1], ie. his BMI being over '30'. It's worth noting that Defendant Roe had over '7' years remaining on his prison sentence.

---

1 This Court should review Mr. Roe's renewed motion for compassionate release which solely relied on the CDC lowering the Body Mass Index from '40' to '30', which qualified Mr. Roe's BMI of '38'. SEE: Defendant Joseph James Roe's Renewed Motion (Doc.370)

Therefore, Lawrence brings forth at least one case from this district where a defendant was granted compassionate release solely because his BMI was over '30'. Lawrence contends surely there are more.

Regarding this Court's reliance on Mr. Lawrence's criminal charge in the instant case making him a danger to society, Mr. Lawrence contends numerous courts across the country, to include this district, that have granted compassionate release to defendants with the same or similar crimes as Mr. Lawrence.

## B.

The government reported to the Court what a wonderful job the "BOP"[2] has done countering the COVID-19 pandemic to prevent it's spread (ECF No. 96, Page ID # 655-656). The government relies "heavily" on the Sixth Circuit's recital of the BOP's detailed protocol for responding to a pandemic, ie. their "Six-Phase Plan" in Wilson v. Williams, 961 F.3d at 833-34 (6th Cir. 2020). However, what the government fails to mention, or totally avoids, is Sixth Circuit Court of Appeals, Chief Judge Cole's opinion stating "the Six-Phase Plan may look good on paper, but when you look behind the curtains, the Six-Phase Plan is not so impressive." Chief Judge Cole goes on to state:

> The BOP casts it's overall response to COVID-19 as a 'multiphase action plan.' (SEE: BOP Br. at 4). That phrase sounds good on paper;

---

2. Not FCI Elkton

it conveys the message that the BOP is doing all that it possibly can to address the outbreak at Elkton. But it means little until we look behind the curtain and examine whether the plan's phases move the BOP closer to keeping the inmates safe. Such an examination here reveals that the BOP's six-phase plan to address COVID-19 is far less impressive than it's title suggests."

"Suffice to say, with stakes this high, the specifics matter far more than the headline. As another court observed, '[t]he government's assurances that the BOP's "extraordinary actions" can protect inmates ring hollow given that these measures have already failed to prevent transmission of the disease.' United States v. Rodriguez, 2020 WL 1627331 at *8 (E.D. Pa. 2020)."

"The measures the BOP took to address the virus, along with those it failed to take, lead me to the conclusion that it did not respond reasonably to the outbreak of COVID-19 at Elkton. As such, the petitioners are likely to succeed on the merits of their Eighth Amendment claim"

SEE: Exhibit A


It appears Chief Judge Cole wasn't deceived by the government's "hogwash", much like Lawrence, who lives at FCI Elkton and personally witnesses the day-to-day kafkaesque and illogical actions of the FCI Elkton Administration and Staff.

The government surely obtains their information regarding FCI Elkton from the FCI Elkton Administration because the AUSA's are not themselves coming in to FCI Elkton to inspect and investigate to come to their own conclusions before reporting that information to the Court. Therefore it is imparative the Court take into consideration the following newly discovered evidence regarding FCI Elkton's Administration reporting to the Courts, government, and/or public the day-to-day operations inside the fences at FCI Elkton.

Lawrence is pretty sure this Court wasn't aware that FCI Elkton's Warden, Mark K. Williams reported on May 08, 2020, in his letter to United States District Court, Central Division of Illinois, Honorable Judge Colin S. Bruce that FCI Elkton Inmate, Michael Brookwalter died of "natural causes". SEE: Exhibit B.

Unfortunately for Warden Williams, also on May 08, 2020, the BOP/DOJ in Washington, D.C. also reported to the public that FCI Elkton Inmate Michael Brookwalter died after a lengthy hospital stay while on a ventilator directly related to COVID-19. SEE: Exhibit C

In this instant case it is very apparent that the Warden was attempting to down play the cause of Brookwalter's death instead of telling the truth of why Mr. Brookwalter died.

Also on May 08, 2020, FCI Elkton HSA Sarah Dees flat out committed perjury in her declaration attached to the government's response (Doc. 58

at Exhibit A) submitted in the Northern District of Ohio, Case No. 4:20-CV-794-JG. HSA Dees avers in her declaration at Paragraph 49-50 that FCI Elkton Inmates were receiving recreation in the recreation department. SEE: Exhibit D .

However, nothing could be further from the truth and because of her dolus conduct, Inmate William T. Morrison, Jr., Fed. Reg.# 19480-045, and Inmate Scott McGinnis, Fed. Reg.# 54053-039, filed BOP Informal Administrative Remedies (BP-8). Inmate McGinnis' BP-8 was answered by SIS Lt. Smith, who made clear that no-inmates were receiving recreation during that time frame. SEE: McGinnis' BP-8, Exhibit E [3].

Inmate Morrison's BP-8 was never answered, but Mr. Morrison did proceed in filing an Office of Inspector General (OIG) Complaint setting forth HSA Dees perjured testimony. SEE: Copy of OIG Complaint, Exhibit G

Lastly related to the ongoing overcrowding at FCI Elkton, Lawrence is sure this Court is unaware that FCI Elkton was designed and constructed to house a maximum capacity of 1,488 inmates. SEE: FCI Elkton's Rated Capacity Computation Form, Exhibit H

---

3. It is note worthy that when Mr. McGinnis filed his Formal Administrative Remedy (BP-9), in the response, the Warden acknowledges the misconduct of HSA Dees and has opened an official investigation. SEE: BP-9 Response, Exhibit F

However, one of the main reasons COVID-19 spread through FCI Elkton like a wildfire was because of the ongoing overcrowding issues. When FCI Elkton went on Full-lockdown related to COVID-19 on March 27, 2020, their Inmate Population was well over 2,000 inmates. SEE: March 27, 2020 FCI Elkton Inmate Population Report at www.bop.gov/locations/institutions/elk; and Defendant's Declaration, Exhibit I at 1-2.

Moreover, Lawrence recently discovered that FCI Elkton did not obtain re-accreditation by the American Correctional Association (ACA) in March, 2020, mostly because FCI Elkton was miserably failing to follow National Standards because of their ongoing overcrowding of inmates issue, along with other matters. SEE: Exhibit I at 3-5.

The Court should take judicial notice [4] of two pending litigations in the U.S. District Court, Northern District of Ohio, regarding the ongoing Inmate Overcrowding issue at FCI Elkton. (SEE: William T. Morrison, Jr. v. Warden, Mark. K. Williams, Case No. 4:19-cv-02676-SL (Doc. 7, ISSUE IV and V) and (Doc. 13); and Clark V. Hayes v. Federal Bureau of Prisons, et al., No. 1:20-cv-01247-JG (Doc. 8 at Paragraph 4, 19-24, 35-37, and 58)). Both of these cases were filed in the Northern District of Ohio well before COVID-19 was ever heard of in the United States of America.

---

4. Under Fed.R. of Evid., Rule 201 (b)(2)

To further show FCI Elkton's testing debacle still continues today, the BOP at the National level, on or around Aug. 25, 2020, lifted their ban on transferring inmates and made FCI Elkton a priority to lower their inmate population. However, BOP Central Office required FCI Elkton test all inmates to assure they were COVID-19 free before transferring to another institution.

FCI Elkton, after allegedly testing and quarantining '60' plus inmates, clearing them for transfer to FCI Ft. Dix, on or around Sept. 15, 2020, shipped said inmates to FCI Ft. Dix. Upon testing the 60 plus arriving inmates, FCI Ft. Dix staff identified '6' inmates testing positive for COVID-19. This of course caused concern with FCI Ft. Dix Staff and Administration. SEE: <u>Exhibit I</u> at 6.

On or around Sept. 25, 2020, FCI Elkton shipped their second load of inmates to FCI Ft. Dix, after declaring the '70' plus inmates to be COVID-19 free. However, upon arrival at FCI Ft. Dix, '6' of those '70' plus inmates tested positive for COVID-19. This second consecutive load of positive testing inmates from FCI Elkton caused FCI Ft. Dix to convince BOP Central Office to halt FCI Elkton from shipping anymore inmates to FCI Ft. Dix until further notice and until FCI Elkton got their act together in identifying positive testing COVID-19 inmates before shipping them to FCI Ft. Dix. SEE: <u>Exhibit I</u> at 7-8.

In this Court's denial order (Doc. 102) made clear that his juvenile criminal history is what drove the Court to make the determination that Lawrence is a danger to the safety of the community. SEE: Doc. 102 at C.

Lawrence agrees that his juvenile record is not something he is proud of and he reflects on that time in his life frequently. The reason Lawrence frequently reflects on his past is to remind him of his mistakes and to assure he will not make those same mistakes in the future.

Mr. Lawrence has shown his improvement and has taken steps to become productive while he has been incarcerated. He continues to display significant signs of rehabilitation during this incarceration. Critically, he has substantial family support that will keep him on the right track. Lawrence submits over `38` letters of support coupled with reference letters signifying his rehabilitation during his incarceration. SEE: Exhibit J.

The Court seems to overlook the fact that Mr. Lawrence will be under direct supervision of the United States Probation Office immediately upon release which should assure this Court that his supervision will be sufficient to ensure Mr. Lawrence is not a danger to the community.

Mr. Lawrence would be released to his Mother's address, 3473 Oakman Blvd., Detroit, MI 48204. He tentatively has employment lined up at Heaven Sent Cupcakes, LLC, 14835 Cruse Street, Detroit, MI 48227, (313)663-0365. SEE: Exhibit I at 9

# CONCLUSION

Lawrence has very clearly set forth the very recent predicate of law ("Zullo") and recent changes of law ("Havis"). It is undisputable that if Lawrence were sentenced today, because of "Havis" he would not be designated as a "career offender" and therefore would receive a much lower sentence[5]. This Court now has the authority under 18 USC § 3582(c)(1)(A) to correct that now erroneous "career offender" designation by deeming that an extraordinary and compelling reason for doing so.

Further, it is uncontrovertable that Lawrence has a BMI over '30'[6], which does meet the criteria for extraordinary and compelling reason for granting compassionate release, and this exact type of relief has been granted in this district previously for similar criminal charges, ie. "Roe".

Lastly, Mr. Lawrence admits he has a checkered juvenile past in which he has made significant changes as evinced.

---

5. Recently, Michigan has passed legislation changing misdemeanor marijuana laws that allow Mr. Lawrence in the very near future to move for expungement of the misdemeanor marijuana charges that the government relied upon to obtain the "career offender" designation. This again signifies that if Mr. Lawrence were sentenced today, he would not be deemed a "career offender".

6. The CDC recently lowered the BMI number to '25'

WHEREFORE, Mr. Lawrence prays this Honorable Court will grant his reconsideration motion and/or any and all other relief as this Court deems proper and just, to include granting his compassionate release.

Date: October 16, 2020

Respectfully Submitted,

James Lawrence #55509-039
Defendant / pro-se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY under penalties of perjury pursuant 28 USC §1746 that Defendant's Motion for Reconsideration of Court's Order Denying Defendant's Renewed Motion for Compassionate Release was given to prison officials with proper first class postage affixed for mailing via U.S. Postal Service Certified Mail, Receipt No. 7020 0090 0001 5033 7991 to U.S. District Court, Office of the Clerk, 231 W. Lafayette Blvd., Detroit, MI 48226 on this 20 day of October, 2020, with special instructions enclosed respectfully requesting the Honorable Clerk to electronically serve this motion on the AUSA's Office.

James Lawrence #55509-039
FCI Elkton
P.O. Box 10
Lisbon, OH 44432
Defendant / pro-se

(11)

EXHIBIT "A"

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CRAIG WILSON, ERIC BELLAMY, KENDAL NELSON, and
MAXIMINO NIEVES, on behalf of themselves and all
others similarly situated,

        *Petitioners-Appellees,*

        *v.*

MARK WILLIAMS, in his official capacity as Warden of
Elkton Federal Correctional Institution; MICHAEL
CARVAJAL, in his official capacity as the Federal
Bureau of Prisons Director,

        *Respondents-Appellants.*

No. 20-3447

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:20-cv-00794—James S. Gwin, District Judge.

Argued: June 5, 2020

Decided and Filed: June 9, 2020

Before: COLE, Chief Judge; GIBBONS and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Sarah Carroll, UNITED STATES DEPARTMENT OF JUSTICE, for Appellants.
David J. Carey, ACLU OF OHIO FOUNDATION, Columbus, Ohio, for Appellees.
**ON BRIEF:** Sarah Carroll, Abby C. Wright, Casen B. Ross, UNITED STATES
DEPARTMENT OF JUSTICE, for Appellants. David J. Carey, ACLU OF OHIO
FOUNDATION, Columbus, Ohio, Joseph Mead, Freda J. Levenson, ACLU OF OHIO
FOUNDATION, Cleveland, Ohio, David A. Singleton, Mark A. Vander Laan, Michael L.
Zuckerman, OHIO JUSTICE & POLICY CENTER, Cincinnati, Ohio, Kirti Datla, HOGANS
LOVELLS US LLP, Washington, D.C., for Appellees. Laura Osseck, DISABILITY RIGHTS

OHIO, Columbus, Ohio; Subodh Chandra, THE CHANDRA LAW FIRM LLC, Cleveland, Ohio, for Amici Curiae.

GIBBONS, J., delivered the opinion of the court in which COOK, J., joined, and COLE, C.J., joined in part. COLE, C.J. (pp. 21–28), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Petitioners, four inmates housed in the low-security Elkton Federal Correctional Institution and its satellite facility FSL Elkton (collectively "Elkton"), on behalf of themselves and others housed or to be housed there, filed a petition under 28 U.S.C. § 2241 to obtain release from custody to limit their exposure to the COVID-19 virus. They sought to represent all current and future inmates, including a subclass of inmates who—through age and/or certain medical conditions—were particularly vulnerable to complications, including death, if they contracted COVID-19. The district court entered a preliminary injunction on April 22, 2020, directing Respondents Mark Williams, Elkton's warden, and Michael Carvajal, the Director of the Federal Bureau of Prisons ("BOP") (together "BOP"), to (1) evaluate each subclass member's eligibility for transfer out of Elkton by any means, including compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two weeks; (2) transfer those deemed ineligible for compassionate release to another BOP facility where testing is available and physical distancing is possible; and (3) not allow those transferred to return to Elkton until certain conditions were met.

On appeal, the BOP argues that (1) the district court lacked jurisdiction under 28 U.S.C. § 2241 and that the suit must comply with the Prison Litigation Reform Act ("PLRA"); (2) petitioners have not shown a likelihood of success on the merits of their Eighth Amendment claim; and (3) the district court abused its discretion in granting the injunction.

We hold that jurisdiction was proper under § 2241, although § 2241 does not permit some of the relief petitioners seek. However, because the district court erred in concluding that petitioners have shown a likelihood of success on the merits of their Eighth Amendment claim,

Case: 20-3447 Document: 47 Filed: 06/09/2020 Page: 15 of 91

## CONCURRING IN PART AND DISSENTING IN PART

COLE, Chief Judge, concurring in part and dissenting in part. COVID-19 is not only highly infectious but also devastating to those unfortunate enough to contract it. It attacks the nose, throat, and lungs of its victims, resulting in effects ranging from flu-like symptoms, to pneumonia, to acute respiratory disease, to death. The likelihood of more severe effects increases dramatically for those who are of an advanced age or who have any number of preexisting conditions, including cardio-vascular disease, respiratory disease, asthma, diabetes, and diseases that compromise the immune system. The inmates whom this preliminary injunction addresses all have characteristics that make them more likely to suffer and die should COVID-19 infect them.

To combat the spread of the virus, the government has recommended that Americans "socially distance" from each other by staying home whenever possible and controlling the nature and extent of their interactions with others to minimize the risk of exposure. But that precaution, which has become routine for so many seeking to guard against infection over the past few months, is unavailable to inmates. Instead, prisoners have been placed in a deadly predicament: prevented by the fact of their confinement from taking recommended precautions, they are left exceptionally exposed to a deadly virus. This reality is particularly concerning for medically vulnerable inmates like those in the subclass.

This predicament has already had deadly consequences at Elkton, which has become an epicenter of the pandemic within the federal prison system. There, groups of roughly 150 inmates continue to be housed together in close quarters. Perhaps predictably, the virus had spread rapidly among inmates and staff alike at the prison by the time the district court issued its preliminary injunction on April 22, 2020. By that time, six inmates at the prison had already died, and more clung to life only with the aid of ventilators, all while the BOP failed to take action to allow the 837 medically vulnerable inmates in its charge at Elkton to follow public health guidelines by maintaining an appropriate distance between themselves and their fellow

inmates." This failure left these inmates in a perilous situation, which the district court sought to address through the preliminary injunction before us today. Upon review of the record, I conclude that the district court did not abuse its discretion in granting the preliminary injunction. I therefore respectfully dissent from the majority's opinion finding that it did so.

## I.

For the reasons it thoughtfully explains, I concur with the majority's determination that the district court properly had jurisdiction in this case under 28 U.S.C. § 2241, as the petitioners seek to challenge the fact or extent of their confinement. *See Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011). For that reason, I also agree that the PLRA is inapplicable to this case. I disagree, however, with the conclusion that the district court lacked jurisdiction to order the transfer of inmates to another BOP facility, as I read *United States v. Jalili*, to suggest that such relief is available in a § 2241 claim. *See* 925 F.2d 889, 893–94 (6th Cir. 1991). Moreover, I do not see our decision in *Martin v. Overton* as being in tension with this conclusion, as that case, unlike this one, involved a conditions-of-confinement claim rather than a fact-of-confinement one. 391 F.3d 710, 714 (6th Cir. 2004).

## II.

Our review of a district order granting a preliminary injunction is "highly deferential." *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) (internal quotation marks and citation omitted). We review factual determinations for clear error, legal conclusions de novo, and the overall decision to grant a preliminary injunction for abuse of discretion. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996). As the majority notes, the district court considers four factors in determining whether to grant a preliminary injunction:

(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others; and

(4) whether the public interest would be served by the issuance of an injunction.

*E.g.*, *City of Pontiac Retired Emps.' Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam).

The majority vacates the preliminary injunction based on its assessment of the petitioners' likelihood of succeeding on the merits of their Eighth Amendment claims. I agree with the majority that the threat of COVID-19 to medically vulnerable inmates in our nation's prisons is an objectively serious one, even more so at a facility like Elkton where prisoners are kept in large groups where they cannot practice social distancing. I disagree, however, with the conclusion that the petitioners are unlikely to succeed in showing that the BOP was deliberately indifferent in responding to that threat.

Our case law is clear: we do not turn a blind eye to prison conditions when the treatment prison officials provide in response to a serious medical need is "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotation marks and citation omitted). Relying on this principle, we found officials to be deliberately indifferent when they persisted in treating an inmate's medical condition with medication that was known to be ineffective instead of an alternative that had proven to be much more effective in addressing the condition. *See Darrah v. Krisher*, 865 F.3d 361, 369 (6th Cir. 2017).

The circumstances here are analogous to those that we considered in *Darrah*. Here, the BOP says that it relied on guidelines from the Centers for Disease Control ("CDC") in crafting its response to the spread of COVID-19 at Elkton. Those guidelines provide that social distancing is "a cornerstone of reducing transmission of respiratory disease." CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* at 4 (Mar. 23, 2020) https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf. Yet, the BOP's multiphase response does not include a single phase that allows for meaningful social distancing. Like the officials in *Darrah*, the BOP persisted with ineffective measures when an effective one was readily available. The fact that the ineffective measures here came in the form of multiple actions instead of a single one does not excuse the BOP's choice to ignore methods that address this "cornerstone" of respiratory-disease management. That failure is more jarring when one

considers that both Congress and Attorney General Barr went out of their way to urge the BOP to take more aggressive measures to address the virus in its facilities.

First, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which allowed the Attorney General to expand the BOP's ability to move prisoners to home confinement. *See* CARES Act, Pub. L. No. 116-136, § 12003(b)(2) (2020). Next, the Attorney General expanded the availability of transfers to home confinement. Then, on April 3, 2020, the Attorney General turned his attention directly to Elkton and other facilities where the COVID-19 outbreak had become particularly severe. He expressly directed the BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates" being held at Elkton and the other facilities where COVID-19 was "materially affecting operations." (R. 10-3, PageID 197.)

Nineteen days passed between the Attorney General's directive to the BOP regarding the use of home confinement for Elkton inmates and the district court's order issuing the preliminary injunction that is at issue in this appeal. During that time, the record does not reflect a substantial effort on the part of the BOP to evaluate for home confinement even the 837 medically vulnerable inmates who make up the subclass. That inexplicable delay had dire consequences. By the time the district court issued its order, six Elkton inmates had already succumbed to COVID-19, with others left hospitalized with severe conditions. That number of cases is even more striking when one considers that the most recent BOP figures show that 78 inmates in federal custody have died from the virus to date, meaning that nearly 8% of all inmate deaths over three months occurred at Elkton—a low-security facility that houses less than 2% of all federal inmates—within the first month of the pandemic. BOP, *COVID-19* Cases, https://www.bop.gov/coronavirus/. I am left with the inescapable conclusion that the BOP's failure to make use of its home confinement authority at Elkton, even as it stared down the escalating spread of the virus and a shortage of testing capacity, constitutes sufficient evidence for the district court to have found that petitioners were likely to succeed on their Eighth Amendment claim.

This conclusion is not inconsistent with the decisions of other circuits. In *Swain v. Junior*, 958 F.3d 1081 (11th Cir. 2020), the Eleventh Circuit considered an Eighth Amendment

claim arising out of a state jail and found the efforts that officials at the jail had undertaken were sufficient to preclude a finding of deliberate indifference. 958 F.3d at 1089. Some of the steps taken by those officials mirror the measures employed by the BOP here, including cancellation of inmate visitation, screening, use of personal protective equipment, and sanitation practices. *Id.* at 1085–86. There was, however, one crucial difference. The Eleventh Circuit observed that the officials had implemented social distancing efforts, including changing the position of bunks to maximize social distancing. *Id.* This record does not reveal similar efforts at Elkton, where inmates still sleep in close proximity in units of 150 prisoners.

The Fifth Circuit also confronted a similar challenge regarding a state facility in *Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020). There, the court did not reach the merits of the deliberate indifference issue, as it found that the district court had misapplied the Eighth Amendment standard altogether. *Id.* at 802. The Fifth Circuit seemed particularly troubled that the officials in *Valentine* did not have a basis to conclude that their actions were inadequate. *Id.* In contrast, the BOP here had a memorandum from the Attorney General highlighting the severity of the outbreak at Elkton and detailing specific steps to address it. In *Marlowe v. LeBlanc*, the Fifth Circuit also rejected an argument that an increased infection rate alone shows deliberate indifference. No. 20-30276, 2020 WL 2043425 at *3 (5th Cir. Apr. 27, 2020). But that argument is not the one we consider today, as petitioners rely on far more than the infection rate to make their case.

The BOP casts its overall response to COVID-19 as a "multiphase action plan." *See* BOP Br. at 4. That phrase sounds good on paper; it conveys the message that the BOP is doing all that it possibly can to address the outbreak at Elkton. But it means little until we look behind the curtain and examine whether the plan's phases move the BOP closer to keeping the inmates safe. Such an examination here reveals that the BOP's six-phase plan to address COVID-19 is far less impressive than its title suggests. That plan consists of two different phases addressing the screening of inmates, an entire phase consisting of only taking inventory of the BOP's cleaning supplies, a phase where the BOP confined inmates to their quarters where they cannot socially distance, and a final phase that just extended the previous one. (R. 10-1, PageID 174–78.) It turns out, then, that the "six-phase" plan is, for practical purposes, a four-phase plan where one

phase is taking inventory of supplies and another involves the locking of inmates in 150-person clusters where they cannot access the principal method of COVID-19 prevention. Suffice to say, with stakes this high, the specifics matter far more than the headline. As another court observed, "[t]he government's assurances that the BOP's 'extraordinary actions' can protect inmates ring hollow given that these measures have already failed to prevent transmission of the disease." *United States v. Rodriguez*, 2020 WL 1627331 at *8 (E.D. Pa. 2020).

Similar scrutiny of the personal protective equipment and cleaning supplies provided to inmates also reveals deep inadequacies. The BOP says that it provided inmates with soap, personal protective equipment, and disinfectant. At first glance, these certainly seem to be positive steps to prevent the spread of the virus. But the record reflects that inmates received four ounces of soap per week and only two disposable masks, and that the disinfectant provided was "watered down." (R. 1-10, PageID 92; R. 1-11, PageID 95.)

The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. (R. 19, PageID 262–63.) The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure. (*Id.*) The BOP's failure to test inmates cannot be blamed on a general inability for prison officials to procure tests either. By that same date, Marion Correctional Institution, a comparably sized state facility in Ohio, had tested nearly all of its inmates. (R. 22, PageID 355.)

The measures the BOP took to address the virus, along with those it failed to take, lead me to the conclusion that it did not respond reasonably to the outbreak of COVID-19 at Elkton. As such, the petitioners are likely to succeed on the merits of their Eighth Amendment claim.

III.

I also find that the balance of the other preliminary injunction factors decidedly favors the petitioners.

The petitioners will be irreparably harmed without an injunction. In the fight against the spread of COVID-19, time is plainly of the essence. Each day spent in detention at Elkton increases the threat to the inmates' health and life. Such an ongoing medical risk—particularly in light of the medical vulnerabilities of the subclass—cautions against vacating the preliminary injunction. *Concerned Pastors for Soc. Action v. Khouri*, 844 F.3d 546, 549 (6th Cir. 2016) (per curiam). The district court recognized that this virus is spreading through Elkton so quickly that current testing capacity cannot keep up. The court accordingly directed the BOP to identify vulnerable inmates at Elkton and begin the process of evaluating available arrangements to protect them from the spread of the virus. It is quite possible that, absent a preliminary injunction, the ultimate success of these claims might come too late for vulnerable inmates who could die if forced to remain at Elkton as litigation proceeds.

The BOP argues that it and the public interest are harmed by the preliminary injunction. These arguments fail. The BOP's recitation of the harms that the injunction purportedly causes vaguely refers to unspecified disruptions to its operations required by the devotion of resources to complying with the injunction. But the Supreme Court tells us that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough" to demonstrate irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). And even if compliance with the order detracts from other functions, there is no higher and better use of BOP resources than to fulfill its legal and moral obligation to care for the lives of those in its custody. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).

The BOP's concerns about the challenges caused by affording inmates access to the alternative arrangements contemplated by the preliminary injunction are unsupported by the record. The BOP does not to point to any evidence that releasing inmates who are eligible for home confinement pursuant to the updated guidance provided in the CARES Act and by the Attorney General will somehow be unable to care for themselves or pose a threat to the public interest. Indeed, Congress's decision to update the requirements for home confinement suggests that, if anything, the public interest is served by more eligible prisoners being released to home confinement. Finally, the BOP's claim that the inability to maintain social distancing during

transfer poses a threat lacks support, as the inmates who would be transferred are already being held in a situation where they cannot engage in social distancing. A transfer process with imperfect social distancing in the short term to achieve a better situation until the pandemic abates or an effective vaccine comes to market is not a greater threat to the public interest than the indefinite confinement of the same prisoners in a facility where they cannot practice social distancing at all.

With the balance of the harms favoring the petitioners, I conclude that the district court did not abuse its discretion in issuing the preliminary injunction.

## IV.

All observers of good conscience can agree that the spread of COVID-19 in jails and prisons is an urgent problem. To address that problem in federal prisons, we rely on the BOP to take measures to protect its inmates, a task that requires consistent, dedicated effort from prison administrators. To be sure, acting more swiftly and thoroughly may require the BOP to spend additional time and resources to keep its inmates safe. But when the government "takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). For the sake of the 837 medically vulnerable prisoners who depend on the BOP to maintain their health and safety, it is my hope that as the BOP continues its efforts to manage the COVID-19 outbreak at Elkton, it will increase its efforts to live up to that responsibility.

For these reasons, I respectfully dissent.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-3447

CRAIG WILSON, ERIC BELLAMY, KENDAL NELSON,
and MAXIMINO NIEVES, on behalf of themselves and all
others similarly situated,

       Petitioners - Appellees,

      v.

MARK WILLIAMS, in his official capacity as Warden of
Elkton Federal Correctional Institution; MICHAEL
CARVAJAL, in his official capacity as the Federal Bureau of
Prisons Director,

       Respondents - Appellants.

```
FILED
Jun 09, 2020
DEBORAH S. HUNT, Clerk
```

Before: COLE, Chief Judge; GIBBONS and COOK, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's April 22, 2020
preliminary injunction is VACATED.

ENTERED BY ORDER OF THE COURT

_Deborah S. Hunt, Clerk_

EXHIBIT "B"

2:13-cr-20015-BGM-DGB #62 Page 6 of 7

U. S. Department of Justice

Federal Bureau of Prisons

*Federal Correctional Institution*

E-FILED
Friday, 15 May, 2020 01:02:15 PM
Clerk, U.S. District Court, ILCD

———————————————————————————————

*Elkton, Ohio 44415*

May 8, 2020

The Honorable Colin S. Bruce
District Judge
Central District of Illinois
218-U.S. Courthouse
201 S. Vine Street
Urbana, IL 61802

Re: BROOKWALTER, Michael Lee
    Reg. No. 37503-298
    Docket No. 2:13CR20015-001

Dear Judge Bruce:

We regret to inform you, Michael Lee Brookwalter, an inmate at this institution, died on May 8, 2020. Inmate Brookwalter was a 56 year-old federal offender sentenced in the Central District of Illinois on May 14, 2014 to a term of 210 months for Sexual Exploitation of a Minor, and Enticement of a Minor.

On May 8, 2020, at 1:43 a.m., inmate Brookwalter was pronounced dead at Salem Community Hospital in Salem, Ohio. He died of natural causes.

If you have any questions regarding inmate Brookwalter's death, please do not hesitate to contact me.

Sincerely,

Mark K. Williams
Warden

cc: John C. Milhiser, U.S. Attorney
    Central District of Illinois

    Michael T. Martens, CUSPO
    Central District of Illinois

    David Paul, Regional Director
    Northeast Regional Director

EXHIBIT A

EXHIBIT "C"



U.S. Department of Justice
Federal Bureau of Prisons

**FOR IMMEDIATE RELEASE**
May 8, 2020

Contact: Office of Public Affairs
202-514-6551

### Inmate Death at FCI Elkton

WASHINGTON, D.C.: On Monday, April 6, 2020, inmate Michael Brookwalter reported to the Health Services Department at the Federal Correctional Institute (FCI) Elkton, in Lisbon, Ohio. Mr. Brookwalter was evaluated by institutional medical staff and treated for a fever and low oxygen saturation. Mr. Brookwalter was transported to a local hospital for further treatment and evaluation. While at the local hospital, Mr. Brookwalter tested positive for COVID-19. On Wednesday, April 8, 2020, he was placed on a ventilator. On Friday, May 8, 2020, Mr. Brookwalter, who had long-term, pre-existing medical conditions, which the CDC lists as risk factors for developing more severe COVID-19 disease, was pronounced dead by hospital staff.

Mr. Brookwalter was a 56 year-old male sentenced in the Central District of Illinois to a 210 month sentence for Sexual Exploitation of a Minor and Enticement of a Minor. He had been in custody at FCI Elkton since September 18, 2018.

FCI Elkton is a low security facility that currently houses 1961 male offenders, with an adjacent Federal Satellite Low which currently houses 406 low security male offenders.

The Bureau of Prisons will continue to provide daily updates and information on actions related to COVID-19 at www.bop.gov/coronavirus/index.jsp.

Additional information about the bureau of Prisons can be found at www.bop.gov.

###

EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

WILSON, ET AL,                              *
                                            *
            Petitioners                     *        CASE NO. 4:20-CV-00794
                                            *
     v.                                     *
                                            *
WILLIAMS, ET AL,                            *        JUDGE GWIN
                                            *
            Respondents                     *

---

## DECLARATION OF SARAH A. DEES

I, Sarah A. Dees, do hereby declare, certify and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons

(BOP). I currently work as the Health Services Administrator at Federal Correctional Institution

(FCI) Elkton in Lisbon, Ohio. I have held this position since January 5, 2020. I also serve as the

Northeast Regional Paramedic, a position I have held since 2016. I have been employed by BOP

since 2013. Throughout this declaration, when I refer to "FCI Elkton" generally, I am referring to

both of the FCI Elkton institutions, the Federal Correctional Institution (FCI) and the Federal

Satellite Low (FSL).

2. In my position as Health Services Administrator at FCI Elkton, I am responsible for

coordinating comprehensive medical, dental, and mental health services of the highest quality

while maintaining a clean, safe, and secure environment for nearly 2500 low security inmates

and in addition to staff. The Health Services Department is staffed by a comprehensive team of

BOP and Public Health Service health care workers, accompanied by professional contract staff

committed to providing the highest standards of professionalism and dedication to the inmate

population. FCI Elkton offers comprehensive ambulatory care addressing primary care, chronic

1

GOVERNMENT
EXHIBIT

A

Attachment 1

D. Finally, all inmates from the FCI will be tested by housing units. We are currently working on the logistics of this and testing cycles.

46. FCI Elkton has contracted with an outside laboratory, (Quest Diagnostics), who will provide the turn-around time (24-48 hours) on testing that FCI Elkton needs. In addition to the 432 tests mentioned above, Quest Diagnostics provided FCI Elkton with an additional 400 test swab kits on May 7, 2020, and say they will provide an additional 150-200 tests each day after that. The logistics of this mass testing are being finalized and should only be limited by how often Quest can pick up the tests.

47. As of May 8, 2020, 134 FCI Elkton inmates have tested positive for COVID-19. 130 inmates have tested negative using the Abbott machine. Of the 357 staff members who work at FCI Elkton, 50 staff members who have tested positive for COVID-19, and 9 staff members have tested negative. There have been 9 inmate deaths related to COVID-19.

## OPERATIONAL CHANGES TO IMPLEMENT COVID-19 ACTION PLAN

48. FCI Elkton has implemented BOP's national action plan, in compliance with BOP's national directives.

49. The implementation of the BOP's COVID-19 Action Plans at FCI Elkton can best be described as a "slowing down" of institutional operations, designed to limit the size of groups inmates can form and also the ability of these smaller groups to interact with each other at FCI Elkton. This minimizes the opportunity for inmates to come into contact with infected persons, and if they do, minimizes the possibility that any infection will spread beyond the smaller group.

50. In general, the smaller inmate groups at FCI Elkton were formed by dividing inmates by housing unit, and by floor, so they can 'shelter in place' with the fewest number of fellow

14

inmates. In order to reduce idle time and provide programs and activities, these groups are rotated through the recreation facility by themselves, and disinfection of the recreation facility is performed before the next group is rotated through it. Programs are delivered on the units, to include Education, Psychology, and Religious Services (especially in consideration of the Ramadan observance). Restrictions are in place to maintain separation between housing units. For example, only one housing unit is released to the cafeteria for "grab and go" meal service. The next unit is not released until the previous unit has returned to their housing quarters. When inmates need to report to Health Services for activities which cannot be performed on the unit (medication administration, etc.), they report to the clinic only with other inmates from their group. Once at the clinic, they wait in areas designed to facilitate social distancing.

51.  As discussed in my previous declaration in this matter, FCI Elkton uses isolation to separate inmates who present with symptoms consistent with COVID-like illness from quarantined asymptomatic or general population inmates. These areas are distinct from the aforementioned housing unit groups and identified with signs prior to entering the unit. Staff are required to utilize proper PPE prior to entering these units to minimize to potential for cross-contamination between units. Inmates have surgical masks to wear when interacting with staff or leaving the assigned cell and their proximity to staff and other inmates is minimized. Medical staff determine if COVID-19 testing is necessary based on applicable guidelines and community standards. If the inmate's condition merits hospitalization, the inmate will be transported to a local hospital.

52.  FCI Elkton uses quarantine to separate asymptomatic inmates who have been in contact with symptomatic inmates during the incubation period, which is up to 14 days for COVID-19. Inmates are housed together during this 14-day period with other asymptomatic

FCI Elkton Health Services have been heroes in their response to this pandemic. The selfless services is humbling to see and participate in. Not once have I been asked, "Why do I have to do this?" or heard someone argue with me about what needs to be done. These providers simply do it. Care for the inmates has not declined during the pandemic.

86. I have successfully advocated to bring awareness to the BOP about the effects the pandemic can have on a system or institution. I have advocated for screenings of both staff and inmates, and for cohorting of the population before it was mandated by the BOP. I have advocated for tighter sanitation controls, for better protection for both the inmates and staff, for more testing for inmates, and for mass testing. I have worked with the National Guard to ensure that appropriate patients were returned to the institution to relieve the burden on the local community and custody staff.

I declare that the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746 this May 8, 2020.

RESPECTFULLY SUBMITTED,

SARAH A. DEES
Health Services Administrator
FCI Elkton

24

EXHIBIT "E"

**REQUEST FOR ADMINISTRATIVE REMEDY**
**INFORMAL RESOLUTION FORM**
**FCI ELKTON, OHIO**

Bureau of Prisons Program Statement 1330.18, "Administrative Remedy Procedures for Inmates," states the "before an inmate seeks formal review of a complaint he must try to resolve the complaint informally by presenting it to a staff member." The staff member must also try to resolve the complaint "informally" before the inmate will be given an Administrative Remedy Form.

INMATE'S NAME: Scott McGinnis NO. 54053-039 UNIT DA

1. Specific Complaint:
   I am grieving the "FACT" that "DA" Unit is not getting rec. time in the Recreation Dept as the other Units are per SARAH A DEES May 08, 2020 Declaration claim.

2. Relief Requested: Allow "DA" Unit to get adequate recreation time in the Rec. Department

3. Date/Time Complaint received from inmate: 5|21|20 / 2:34 pm

4. Date/Time Informally discussed with inmate: 5/27/20 1330

5. Staff Response: Currently FCI Elkton is under Phase 7, which is under the direction and guidance of Central Office under guidelines with CDC. At the present time no unit is getting recreation time in the Recreation Dept.

6. Date Administrative Remedy provided: _____

7. Informal Resolution was / (was not) accomplished.

_Scott McGinnis_ 54053-039                    5/28/20
Inmate's Signature/Register No.                DATE

_T. Smith / LT_                               5/28/20
STAFF MEMBER'S NAME & TITLE                   DATE

_____                            8-14-2020
UNIT MANAGER'S SIGNATURE                      DATE

The Unit Manager, by signing above, certifies that good faith efforts were attempted to resolve this inmate's complaint.

DISTRIBUTION: If complaint is not informally resolved, forward original resolution form attached to administrative remedy to the Administrative Remedy Clerk.

EXHIBIT "F"

**REQUEST FOR ADMINISTRATIVE REMEDY**
**PART B - RESPONSE**

**MCGINNIS, SCOTT MARTIN**
Reg. No.:  54053-039
Remedy I.D.:  1041896-F1
Qtr:  Unit D/A

This is in response to your Request for Administrative Remedy receipted August 20, 2020, in which you alleged staff misconduct at FCI Elkton.

In regard to your allegation against staff, the Federal Bureau of Prisons takes staff misconduct allegations seriously. All staff are held to a high standard in regard to their treatment of inmates, and are expected to be fair, impartial, and humane. Your allegations will be reviewed and if it is determined an investigation is warranted, it will be referred to the proper investigating authority. However, as the allegation concerns staff conduct, the result of any investigation or personnel action taken is protected from being released under the Privacy Act. Therefore, you will not be provided information regarding the outcome of any review or investigation.

Accordingly, the response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Northeast Region, U.S. Custom House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106, within 20 calendar days of the date of this response.


_____                    _9. 3-20_____
Mark K. Williams, Warden                              Date

Exhibit G

William T. Morrison, Jr.
Fed. Reg. # 19480-045

FCI Elkton
P.O. Box 10
Lisbon, OH 44432
(330) 420-6200

Date: May 25, 2020                  U.S. Postal Service Certified Mail
                                    Receipt # 7019 1120 0000 9929 7371

Office of the Inspector General
211 W. Fort Street, Ste. 1402
Detroit, MI 48226
Attn: Special Agent, Matthew J. Nutt

RE: Complaint Against HSA - S. Dees for Perjury

Dear Agent Nutt:

 I wish to file an official complaint regarding FCI Elkton, Health Services Administrator, Sarah A. Dees' perjured May 08, 2020, Declaration submitted in United States District Court, Northern District of Ohio, Case No. 4:20-cv-794, Docket Number 58, Government's Exhibit A at Paragraphs "49-50" (SEE: Attachment 1).

 HSA Dees' averment in Paragraph "50" (Attachment 1) is easily proven false. She avers in pertinent part, Paragraph "50"...:

  "In order to reduce idle time, and provide programs and activities, these groups are rotated through the recreation facility is performed before the next group is rotated through it."

 Nothing could be further from the truth, and HSA Dees knew that when she signed her Declaration (Attachment 1). Inmates at FCI Elkton have not received any sort of recreation outside of the Inmate Housing Units since on or around March 25, 2020. This is easily proven by obtaining copies of the FCI Elkton Inmate Count Sheets from April 03, 2020, through May 24, 2020. This will show that Inmates have been continuously housed in the recreation facility under quarantine/isolation during these dates.

Furthermore, should you obtain copies of the Closed Circuit Television (CCTV) footage of the recreation facility during the same above dates, it will again show that all of the exercise equipment has been removed from the recreation facility and Inmates were housed in it during those dates, making it impossible for General Population Inmates to be rotated through the recreation facility by themselves as HSA Dees swears in her Declaration at Paragraph "50."

Moreover, as the HSA of FCI Elkton, she surely would be informed of the housing location of every quarantined Inmate at FCI Elkton during the dates in question. She obviously has intentionally committed perjury and should be prosecuted to the fullest extent of the law for her actions. Ms. Dees certainly would prosecute any Inmate having she got the opportunity to, she felt was being less than truthful to her. For HSA Dees to knowingly commit perjury is criminal and she should be held accountable.

Thank you in advance for your anticipated cooperation in this matter. I look forward to your timely response.

I declare under penalties of perjury pursuant 28 USC §1746 that the foregoing is true and correct.

William T. Morrison, Jr. #19480-045

cc: files
    Honorable Judge, James S. Gwin

(2)

Exhibit H

PS 1060.11
June 30, 1997
Attachment B, Page 1

## RATED CAPACITY COMPUTATION (EMS 36 - 02/83) *

\* (THIS FORM REPLACES RATED CAPACITY FORMS EMS 36, 37, 38 AND 39, DATED JULY 1991)

| | | | | |
|---|---|---|---|---|
| INSTITUTION NAME: | FCI ELKTON | | DATE: | June 3, 2015 |
| SENTRY REPORTING UNIT: | General | SECURITY LEVEL | | LOW |
| TOTAL INSTITUTION CAPACITY: | 1488 | | (SUM OF ITEMS 1 AND 2) | |
| SPECIAL HOUSING CAPACITY (-): | ░░░░ | | (ITEM 1 TOTAL, IF ANY) | |
| R A T E D   C A P A C I T Y : | | | (ITEM 2 LESS ITEM 1) | |

1. SPECIAL HOUSING:   ADMINISTRTIVE DETENTION/DISCIPLINARY SEGREGATION AND HOSPITAL/INFIRMARY (NON MEDICAL FACILITIES)

| UNIT NAME | HOUSING TYPE (ROOM, CELL, ETC) | WET / DRY | NUM- BER | SQUARE FOOTAGE EACH | CAPACITY |
|---|---|---|---|---|---|
| 5F-SHU | Cell | Wet | ░░░ | 52 | ░░░ |
| 5F-SHU | Handicap Cell | Wet | | 99 | |
| 5F-MED | Handicap Cell | Wet | | 169 | |
| 5F-MED | Handicap Cell | Dry | | 171 | |
| | | | SPECIAL HOUSING CAPACITY: | | ░░░ |

2.  PERMANENT HOUSING

| UNIT NAME | HOUSING TYPE (ROOM, CELL, ETC) | WET / DRY | NUM- BER | SQUARE FOOTAGE EACH | CAPACITY |
|---|---|---|---|---|---|
| Unit 1 | Cubicle | Dry | ░░░ | 92 | ░░░ |
| Unit 2 | Cubicle | Dry | | 92 | |
| Unit 3 | Cubicle | Dry | | 92 | |
| Unit 4 | Cubicle | Dry | | 92 | |
| Unit 5 | Cubicle | Dry | | 92 | |
| Unit 6 | Cubicle | Dry | | 92 | |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| Total from Sheet 1(a) (if needed) | | | | | 0 |
| | | | | | 0 |

PERMANENT HOUSING RATED CAPACITY:   ░░░

PS 1060.11
June 30, 1997
Attachment B, Page 2

RATED CAPACITY COMPUTATION (CONTINUED)

| | | (EMS 36 - 02/93) PAGE 2 |
|---|---|---|
| INSTITUTION NAME: | FCI ELKTON | DATE: June 3, 2015 |
| SENTRY REPORTING UNIT: General | SECURITY LEVEL: | LOW |

PLEASE REPORT ANY TEMPORARY HOUSING, RENOVATIONS OR EXPANSIONS OF HOUSING UNITS UNDER ITEMS 3 AND 4 BELOW. ENTER NONE UNDER UNIT NAME IF THERE ARE NONE TO REPORT.

3. TEMPORARY HOUSING - THESE AREAS WERE NOT DESIGNED FOR/HAVE NOT BEEN PERMANENTLY CONVERTED TO INMATE BEDSPACE AND ARE NOT PART OF RATED OR TOTAL INSTITUTION CAPACITY

| UNIT NAME | HOUSING TYPE (TV ROOM, GYM, ETC) | WET / DRY | NUM-BER | SQUARE FOOTAGE EACH | CAPACITY |
|---|---|---|---|---|---|
| N/A | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |

4. RENOVATION/EXPANSION (FUTURE RATED CAPACITY)

| UNIT NAME | HOUSING TYPE (TV ROOM, GYM, ETC) | WET / DRY | NUM-BER | SQUARE FOOTAGE EACH | CAPACITY |
|---|---|---|---|---|---|
| N/A | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |

EXPLANATION FOR ANY CHANGES TO RATED CAPACITY:

PREPARED BY: (FACILITIES MANAGER)

DATE PREPARED: 6/3/15

APPROVED: (CHIEF EXECUTIVE OFFICER)

DATE APPROVED: 6/3/15

(RETAIN COPY OF THE SIGNED FORM AT THE INSTITUTION FOR AUDIT PURPOSES)
- - FORWARD THE ORIGINAL SIGNED FORM TO THE REGIONAL DIRECTOR

REVIEWED BY: (FACL. ADMINISTRATOR)

DATE REVIEWED:

APPROVED: (REGIONAL DIRECTOR)

DATE APPROVED:

(RETAIN COPY OF THE SIGNED FORM AT THE REGIONAL OFFICE FOR AUDIT PURPOSES)

SCAN AND SEND SIGNED FORMS & COVER MEMO VIA GROUPWISE TO:

ASSISTANT DIRECTOR - ADMINISTRATION DIVISION

ASSISTANT DIRECTOR - CORRECTIONAL PROGRAMS

Form created by Darren Smith, Mid-Atlantic Regional Office

PS 1060.11
June 30, 1997
Attachment B, Page 1

## RATED CAPACITY COMPUTATION (EMS 36 – 02/83) *

* (THIS FORM REPLACES RATED CAPACITY FORMS EMS 36, 37, 38 AND 39, DATED JULY 1991)

| | | | | |
|---|---|---|---|---|
| INSTITUTION NAME: | FCI ELKTON | | DATE: | June 3, 2015 |
| SENTRY REPORTING UNIT: | RDAP | SECURITY LEVEL | | LOW |
| TOTAL INSTITUTION CAPACITY: | | 128 | (SUM OF ITEMS 1 AND 2) | |
| SPECIAL HOUSING CAPACITY (-): | | | (ITEM 1 TOTAL, IF ANY) | |
| R A T E D   C A P A C I T Y: | | 128 | (ITEM 2 LESS ITEM 1) | |

1. SPECIAL HOUSING:  ADMINISTRTIVE DETENTION/DISCIPLINARY SEGREGATION AND HOSPITAL/INFIRMARY (NON MEDICAL FACILITIES)

| UNIT NAME | HOUSING TYPE (ROOM, CELL, ETC) | WET / DRY | NUM- BER | SQUARE FOOTAGE EACH | CAPACITY |
|---|---|---|---|---|---|
| N/A | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | SPECIAL HOUSING CAPACITY: | 0 |

2.  PERMANENT HOUSING

| UNIT NAME | HOUSING TYPE (ROOM, CELL, ETC) | WET / DRY | NUM- BER | SQUARE FOOTAGE EACH | CAPACITY |
|---|---|---|---|---|---|
| RDAP | Cubicle | Dry | | 92 | |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | Total from Sheet 1(a) (if needed) | | | | 0 |
| | PERMANENT HOUSING RATED CAPACITY: | | | | |

PS 1060.11
June 30, 1997
Attachment B, Page 2

RATED CAPACITY COMPUTATION (CONTINUED)

| INSTITUTION NAME: | FCI ELKTON | (EMS 36 – 02/93) PAGE 2 |
| | | DATE: June 3, 2015 |
| SENTRY REPORTING UNIT: | RDAP | SECURITY LEVEL: LOW |

PLEASE REPORT ANY TEMPORARY HOUSING, RENOVATIONS OR EXPANSIONS OF HOUSING UNITS UNDER ITEMS 3 AND 4 BELOW. ENTER NONE UNDER UNIT NAME IF THERE ARE NONE TO REPORT.

3. TEMPORARY HOUSING – THESE AREAS WERE NOT DESIGNED FOR/HAVE NOT BEEN PERMANENTLY CONVERTED TO INMATE BEDSPACE AND ARE NOT PART OF RATED OR TOTAL INSTITUTION CAPACITY

| UNIT NAME | HOUSING TYPE (TV ROOM, GYM, ETC) | WET / DRY | NUM- BER | SQUARE FOOTAGE EACH | CAPACITY |
|---|---|---|---|---|---|
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |

4. RENOVATION/EXPANSION (FUTURE RATED CAPACITY)

| UNIT NAME | HOUSING TYPE (TV ROOM, GYM, ETC) | WET / DRY | NUM- BER | SQUARE FOOTAGE EACH | CAPACITY |
|---|---|---|---|---|---|
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |

EXPLANATION FOR ANY CHANGES TO RATED CAPACITY:

PREPARED BY: (FACILITIES MANAGER)

   DATE PREPARED: 6/3/15

APPROVED: (CHIEF EXECUTIVE OFFICER)

   DATE APPROVED: 6/3/15

(RETAIN COPY OF THE SIGNED FORM AT THE INSTITUTION FOR AUDIT PURPOSES)

-- FORWARD THE ORIGINAL SIGNED FORM TO THE REGIONAL DIRECTOR

REVIEWED BY: (FACL. ADMINISTRATOR)

   DATE REVIEWED:

APPROVED: (REGIONAL DIRECTOR)

   DATE APPROVED:

(RETAIN COPY OF THE SIGNED FORM AT THE REGIONAL OFFICE FOR AUDIT PURPOSES)

SCAN AND SEND SIGNED FORMS & COVER MEMO VIA GROUPWISE TO:

   ASSISTANT DIRECTOR - ADMINISTRATION DIVISION

   ASSISTANT DIRECTOR - CORRECTIONAL PROGRAMS

Form created by Darren Smith, Mid-Atlantic Regional Office

Exhibit I

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                    Case No. 17-20259

JAMES LAWRENCE,                        Hon. Victoria A. Roberts

Defendant.

## DECLARATION

I, James Lawrence, being over the age of `18` and of competent mind to do so, hereby declare under penalties of perjury pursuant 28 USC § 1746 that the following is true and correct:

1. I am the Defendant in the above entitled cause

2. There were over 2,000 prisoners housed at FCI Elkton on or around March 27, 2020, when the Institution went on full-lockdown due to the COVID-19 pandemic.

3. The American Correctional Association (ACA) conducted their accreditation audit of FCI Elkton on March 3-5, 2020.

4. The purpose of the ACA audit was to assure FCI Elkton was in compliance with the National Standards

5. FCI Elkton was not re-accreditated by the ACA after their audit in part due to the ongoing overcrowding of prisoners at FCI Elkton.

6. FCI Elkton shipped '60' plus, supposedly negative COVID-19 testing inmates to FCI Ft. Dix on or around Sept. 15, 2020. Upon arrival at Ft. Dix the '60' plus inmates were tested with '6' of those inmates testing COVID-19 positive.

7. On or around Sept. 25, 2020, FCI Elkton shipped over '70' negative COVID-19 testing inmates to FCI Ft. Dix. Upon those '70' plus inmates' arrival at FCI Ft. Dix, they were all tested for COVID-19 with '6' of those inmates testing positive for COVID-19.

8. The ongoing testing debacle at FCI Elkton caused all shipments of inmates from FCI Elkton to FCI Ft. Dix halted until the FCI Elkton Administration can assure FCI Ft. Dix they can ship only negative COVID-19 testing inmates from FCI Elkton to FCI Ft. Dix.

9. Upon release, I will reside at my mother's house - 3473 Oakman Blvd., Detroit, MI 48204, where I have gainful employment waiting on me at Heaven Sent Cupcakes, LLC.

10. All the exhibits accompanying my motion for reconsideration are true and correct authentic copies of the originals.

I declare under penalties of perjury pursuant 28 USC § 1746 that the foregoing is true and correct.

Executed on this _19_ day of October, 2020.

James Lawrence #55509-039
Defendant /pro-se

Exhibit J

 **Gmail**

sailz on 60hz <kelsilawrence407@gmail.com>

**Fwd: Letter**
2 messages

**Cmf Gutta** <cmfgutta789@gmail.com>                    Wed, Oct 7, 2020 at 4:58 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ---------
From: **Ciarra Jefferson** <jeffersonciarra5@gmail.com>
Date: Wed, Oct 7, 2020, 8:23 AM
Subject: Letter
To: Cmfgutta789@gmail.com <Cmfgutta789@gmail.com>


Tatianna Brooks
5871 Biddle St.
Romulus, MI 48174

October 4, 2020

Re: James Lawrence

To the attention of Honorable Judge,

Greetings, I am writing this letter to request leniency for my cousin and dear friend, James Lawrence. I have known James for over ten years and has always known him to be an upright gentleman of honest and noble character. I was saddened to hear of his current circumstances and understand the severity of the crime he is accused of, but I am inclined to express my perspective of the positive impact James has had on his family and the youth of Detroit.

My husband and I are both a part of the educational community here in Detroit. My husband, principal of Dove Academy of Detroit and myself, owner of EngagED Literacy Consulting, have sponsored many educational events in the Detroit area. James has always expressed his passion for literate urban communities and has supported us in our efforts to spread the word and transport kids to and from our community events. We love and appreciate his support and encouragement!

Although James has not made the best decisions in the past, knowing the man he is, I truly believe he is remorseful for the choices he has made and only wants to do what's best for his family!  Seeing as though James has a family who needs him during these everchanging times and has close ties to the community, it is my hope that the court takes this letter into consideration for a lesser sentence for James Lawrence.

Thankfully,



 Gmail

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

**Fwd: Character letter**
2 messages

**Cmf Gutta** <cmfgutta789@gmail.com>                          Mon, Oct 5, 2020 at 4:52 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Rio Brown** <muddbutt316@gmail.com>
Date: Mon, Oct 5, 2020, 4:50 PM
Subject: Character letter
To: Cmf Gutta <cmfgutta789@gmail.com>

# Honorable Judge Roberts

    My name is Mario Brown I'm the god father to one of my good friend James Lawrence children in which he had during his incarceration I've been too baby showers also was at the hospital the day his son was born filling in for my friend in aspects of life that he couldn't attend. Not that it's a problem at all because I'd do over an over again until they free my friend. True enough my friend was convicted of a crime an found  guilty, b4 this whole situation James Lawrence was involved in his community giving shoes an clothes to the less fortunate. I've seen him literary give a homeless man the sneakers off of his feet, I've also watched him feed over 500 homeless people in 1 day not because someone asked him too he jus woke up an felt like doing it out the kindness of his heart. Not only that James is very much involved in aiding his mother an his grandfather who is getting up there in age. I would hate to see my friend get sick or worst being locked inside a facility an can't properly quarantine away from people like how we do on the outside. James has done 3 an a half years of a 5 year sentence. When I converse wit James over the phone all he talks about is coming home to his 5 children an his mother an grandfather. He talks about being legit this time because he doesn't ever wanna come back to this facility. Me an James plan on opening a clothing store when he comes home to help bring generational wealth an keep him off the streets and leave something here for our future legacies. I appreciate you Judge Roberts for taking the time out to read this character letter I hope you see the vision for my friend James Lawrence who I'm 100% certain he has been rehabilitated.


                    ~Mario Brown

    Sent from my iPhone

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                  Mon, Oct 12, 2020 at 12:06 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



October 5, 2020


Attention: Honorable Judge Roberts


Dear Judge Roberts, My Name is Teri Evans. I am the CEO of a company Called Cake Making Divas. I am writing you today on Behalf of a very special Friend of mines. His Name is James Lawrence. I met James about  seven years ago and he wasn't just an ordinary customer. We he reached out to me to create a birthday cake for him, He showed me who he really was. He was so energetic, fun, loving life, passionate, and excited. Most of my male customers are pretty laid back but James was different. The years went by and James and I got closer. I started to call him my son because even though he's only a little younger than me I felt that he respected, admired and looked up to me. I in return saw so much potential in him. I learned that not only was he a lively person, I learned that he was motivated, a family man, loyal, and an amazing father. I used to tell him all the time to keep growing, keep building but also to be wise with his decisions.

When James got in trouble I was hurt. I was so disappointed with him, I worried for his kids and family as well because he is their world. James is the type of person that you can count on and loves to give as much as he recieves. He is not a criminal or a danger to anyone. I know what he did was illegal and he is now paying for it. This time he has spent away from all of his loved ones  I know hurts him the most. He had a rough childhood and could have used way better rolemodels and guidance. Even through all of that he still managed to be a wonderful person, with a huge heart.  I've been praying for him constantly as I always used to. When I write him and speak with him now I hear a completly different tone. I see a young man growing, maturing, planning and evolving. I am so proud of him. Even behind bars I still try to guide him and show him the world is positive and you have so much to live and fight for.

I know that I am one of James's Role models and I honestly know he has so much potential to be great, He just needs to be around it more. This time he has done has been a light, a huge light in a dark space that James may have been in. When He comes home I know he will Make a difference and were planning to mentor young boys. We won't them to hear James story and learn from it instead of finding out the hard way.  I'm a giver, motivater, and hard worker. James is a different person around me which shows that he wants to and can be great.

Your Honor, Im asking for James to be able to come home, not only because I feel he has done his time, but because him being gone has and still affects so many people lives especially his hyoung children everyday that he is not here. We are also very concerned for his health and safety due to covid-19. Your Honor Please consider sending a young man, family man, growing man, and loving man back home to his family and loved ones. I'm going to personally makes sure he stays on track and become a better man than he even thought he could be. He will never come before you, any other judge, or officer in the upcoming future. We are Going to Fight to make him strong, powerful, and succesful because he



has all of the potential to do so. Thank you so much for taking the time out to hear about my amazing Friend/ Son. I hope you get to see the side of him you didn't know through my words.  Have an amazing Day!

Sincerly Your's

Teri Evans

Cake Making Divas

# COURT REFERENCE LETTER

Antonya King
1505 Indian Forest Trl, STONE MTN, Georgia, 30083
(404) 660-9019
antonyadlk@yahoo.com

Date: October 8 2020

Dear Honorable Judge Roberts,

My name is Antonya King and proud to offer my recommendation of James Kyle Lawrence to whom I have personally known for 14 years as my friend. We met our sophomore year in High School. We became close friends back then because we shared a love for making music and other similar dreams. James was a very talented, bright young man with a warm heart. We would stay on the phone for hours, creating different business plans, and come up with numerous ideas to get our music/films out into the world. We were close! He was a great person to call when life got rough! He offered great advice and a listening ear. He was sincere and trustworthy!

During my relationship with James Kyle Lawrence I have experienced an individual who shows up earlier than asked, works hard, and carries themselves in a polite, respectable manner. In addition, James Kyle Lawrence is a family-person who has always presented themselves with levelheadedness and grace.

It's with great confidence that I recommend James Kyle Lawrence as someone who, I truly believe, possesses the character and judgment for the betterment of our community.

Please do not hesitate to contact me if you should require any further information.

Sincerely,

**Signature** _____

By Antonya King Date: October 8 2020

Page 1

 Gmail

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd: Character letter
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                    Sun, Oct 4, 2020 at 2:53 AM
To: kelsilawrence407@gmail.com

> ---------- Forwarded message ---------
> From: **keenan hestle** <keenanhestle@gmail.com>
> Date: Sun, Oct 4, 2020, 1:51 AM
> Subject: Character letter
> To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>
>
>
> To whom it may concern;
>
> My name is Keenan Hestle and I'm close friends with  James Lawrence who's an inmate within the institution. I'm writing this letter on his behalf to describe the person that I know now, since Mr. Lawrence's  incarceration he have made some great strides into becoming a better person, better father, a better son and a better friend. We've had numerous conversations about positive opportunities in life such as truck driving and the endless business opportunities there are in transportation. With my resources Mr. Lawrence could be employed or trained as soon as he is home but I have a growing concern about the harsh living conditions he's under and is worried about his physical and mental health. I'm asking that you please grant my dear friend the opportunity to be with us sooner than expected.
> --
> Sincerely,
>
> Keenan Hestle

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                          Mon, Oct 12, 2020 at 12:26 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 **Gmail**

sailz on 60hz <kelsilawrence407@gmail.com>

# Fwd:

2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                   Fri, Oct 2, 2020 at 7:34 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Lashanique Watts** <nenebabyy20@gmail.com>
Date: Fri, Oct 2, 2020, 7:29 PM
Subject:
To: <cmfgutta789@gmail.com>

To Whom it May Concern:

I am writing this letter in the hopes that it will help you see what kind of person James Lawrence is, despite the transgressions that led us all to this point.

I have known James as a friend for over 10 years, and in that time I have seen many aspects of James personality. I have always found him to be extremely kind, dependable and well regarded among his peers.

The transgression of the crime committed should not be the only factor you look at in this case. I hope you will also consider James being a father of 4 boys and 1 little girl who needs him dearly.

I can tell you without a doubt that James is incredibly remorseful for what he has done. He has expressed this to many times, and I believe it has been reflected in his efforts to make amends to the court. It was a childish mistake , but James deserves a second chance. I hope you will be willing to give him one.

Sincerely,
Lashanique Watts

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                          Mon, Oct 12, 2020 at 12:27 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



October 3, 2020

To whom it may concern,

I am writing this Letter on behalf of my dear friend James Lawrence. I've known James for many years and I've had the privilege to watch the progression/transformation of boy to man. He's always had to the personality to make anyone laugh, even during their harshest days. He's a man of integrity, and displays that by lending an ear to listen, and a helping hand if ever needed. His wise words have even gotten me over some stormy days. I've watch this man feed the homeless, participate in community events , and even host a Father's Day event. Although these things are wonderful characteristics in anyone , I think the most valued in my book is watching the bond and relationship he has with his children. I'm very secure in saying that he is ready to dedicate every moment to make up for time loss during his incarceration. Feel free to contact me at the information provided below for any further questions or concerns.


Sincerely yours,

Lance Gates

lance.gates@ymail.com

(248)914-8836



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Fwd: Character Letter from Joshua Scott
2 messages

**Cmf Gutta** <cmfgutta789@gmail.com>
To: kelsilawrence407@gmail.com

Fri, Oct 2, 2020 at 4:16 PM

---------- Forwarded message ----------
From: **Joshua Scott** <joshua.scott0982@gmail.com>
Date: Fri, Oct 2, 2020, 9:56 AM
Subject: Character Letter from Joshua Scott
To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

To Whom it may concern,

I have known James Lawerence his entire life and he is a loving, caring brother, son, father and most of all a provider. Although he has been impacted by the unstable environmental challenges and set backs most young men face growing up in poverty, he has been proven to be able to overcome them. When faced with spending more time after this without his three children, James will not be one to allow for circumstances to impact the well being of him or his family unit ever again. I ask and urge that any ability to allow a release of James be reviewed and evaluated, and let him reconnect with his family in the most lawful and productive manner.

Joshua Scott

**sailz on 60hz** <kelsilawrence407@gmail.com>
To: tajalawrence13@gmail.com

Mon, Oct 12, 2020 at 12:27 PM

[Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd:
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                     Thu, Oct 1, 2020 at 10:52 PM
To: kelsilawrence407@gmail.com

> ---------- Forwarded message ---------
> From: **Johnte Harris** <johnharris2145@gmail.com>
> Date: Thu, Oct 1, 2020, 9:11 PM
> Subject:
> To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

James is my older cousin and I don't think I met a man that loves his family more then him. As the situation he is in now may have a bad reflection on him that doesn't define the man he really is. I know I can call him whenever I need some help and he will help me get through it but not just me he will do the same for any one of his loved ones. I've seen him feed the homeless and give back to the community when he didn't have to he did it out of the kindness of his heart and the longer he stays away from us the more pain it puts our Family through. I just want to ask for you to give him another chance and Let him return to us and we can cherish the time we have because tomorrow isn't promised for no man.

---

**sailz on 60hz <kelsilawrence407@gmail.com>**                     Mon, Oct 12, 2020 at 12:28 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



To whom it may concern,

My name is James Lopaze Burdin. I am the father to James Kyle Lawrence father. I am writing this letter in behalf of my son. I know my son has made some mistakes in his life but he has also helped out anyone in need that crosses his path. James is an outstanding father and caring son. I am asking the court to grant James Kyle Lawrence release. My son has COVID-19 from being in the Federal Prison, also the court made a mistake on my sons Guide Lines. The doctors are not giving my son the right medical attention that he needs. Inmates are dying from Covid-19 and they wont do any X-rays on my sons chest. I dont want my son to die in prison. James has proven to the court system that he is ready to adjust back into the world, he got his GED to do so. James has a strong support system waiting for him along with his five children that desperately need their father. I am asking as a father that you look at the facts in his sentence guide, and the support he has and see that release is right for him. My son has missed out on so much of his kids life and he just wants a fresh start in life. We are doing the best we can to help take care of the grandkids but he ultimetly need thier own father.



 **Gmail**

sailz on 60hz <kelsilawrence407@gmail.com>

---

## Fwd: Character Letter
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                    Thu, Oct 1, 2020 at 5:47 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Khalil Hollins** <hollinskhalil@icloud.com>
Date: Thu, Oct 1, 2020, 5:45 PM
Subject: Character Letter
To: <Cmfgutta789@gmail.com>

# To whom it may concern
# I am writing This letter in the desire that it will help you see the true characteristics of James Lawrence, in spite of the wrongdoing that led us to this point.

I have been a friend of James for roughly 3-4 years now. In that small time period I've realized a lot about it. The way he loves to keep his family close and his cares for others whom are not family. He loves to be around good energy and people who love him. I was surprised to hear about the case a few years back as James was always a caring individual to me. I totally understand the solemnity of this matter; although, I hope you will show some clemency.

He's always been a stand up guy and gives the proper respect to everyone. I met James through his younger cousin DJ; whom I went to high school and played football with. James allowed DJ to stay with him along with their other younger cousin. James allowed his two younger cousins to stay with him instead of leaving them astray to be homeless. He made both (young men at the time) get jobs and help contribute to the rent. A few months later he allowed his cousins pregnant girlfriend to move in also, since she was having issues at home with her parents. He did all this while still caring and providing for his own children and other family members. Not everyone can do what James did and that's just what it is.

While it is wretched that he has made some bad decisions, in consequence resulting in this case. It comes as no shock that he has and is ready to accept responsibility for his actions.

Sent from my iPhone

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                          Mon, Oct 12, 2020 at 12:28 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 **Gmail**

sailz on 60hz <kelsilawrence407@gmail.com>

---

**Fwd:**
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                    Thu, Oct 1, 2020 at 5:37 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Akia Williams** <akia725@gmail.com>
Date: Thu, Oct 1, 2020, 5:32 PM
Subject:
To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

# Mr Lawrence Is a beautiful person who feeds the homeless also will give you the shirt off his back if needed to. He has 5 beautiful children that needs him more then anything, a wonderful family that gives him a lot of support. Mr James is great to Society and we could use more people like him out here. I'm Akia and I know once Mr James is sent home I'll be on him everyday to do great , I'm sure with the support team he has Mr James will do wonderful on his release also for the rest of the upcoming time that he's home . He will do great!!!

---

**sailz on 60hz** <kelsilawrence407@gmail.com>          Mon, Oct 12, 2020 at 12:29 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Fwd: Character letter
2 messages

**Cmf Gutta** <cmfgutta789@gmail.com>                                   Thu, Oct 1, 2020 at 5:11 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Antionne Houston** <eyebattle313@gmail.com>
Date: Thu, Oct 1, 2020, 9:45 AM
Subject: Character letter
To: <cmfgutta789@gmail.com>

# Dear judge

James Lawrence have spent the last few years of his life righting his wrongs and I can honestly say I believe he's rehabilitated. He's a pillar to this family, kids and community and I'm very concerned with him being such a high risk of contracting Covid 19. He has a strong support system and we're all waiting to assist him on his path to redemption

Sent from my iPhone

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                          Mon, Oct 12, 2020 at 12:30 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 Gmail

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd: From: Gentry Heath
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                    Wed, Sep 30, 2020 at 8:28 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Gentry Heath** <leelinheath@gmail.com>
Date: Wed, Sep 30, 2020, 7:46 PM
Subject: From: Gentry Heath
To: <cmfgutta789@gmail.com>

James has always been a men of honor and he is very well responsible and respected. He also is and was a big part of his children life before he was incarcerated. He even supported the homeless by feeding them. He's also was pursuing a music career before incarceration. He was a very big impact on a lot of people life. And this is why I believe that James Lawrence deserves a second chance.

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                    Mon, Oct 12, 2020 at 12:31 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd: Character Letter from Adari Perkins Sr.
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                    Wed, Sep 30, 2020 at 11:46 PM
To: kelsilawrence407@gmail.com

--------- Forwarded message ---------
From: **Adari Perkins** <perkins1son@gmail.com>
Date: Wed, Sep 30, 2020, 9:46 PM
Subject: Character Letter from Adari Perkins Sr.
To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

The Honorable Judge Roberts,

I'm writing this letter on the behalf of my very good friend for well over 10 years Mr. James Lawrence. I was both troubled & surprised to hear about his recent case as he's always been a rather solid person. It is for this reason I am happy to write this letter of reference for Mr. James Lawrence regarding this matter. I understand the seriousness of this matter however, hope the court will show some leniency.

James Lawrence has always been an upright character in the community. In our friendship, he has really been there for me, especially when I was dealing with the loss of my father. He made it a point to be there & show a significant amount of support during a trying time in my life. It was James that was the source of camaraderie for both me & my family. He has truly been a great friend over the years.

In addition to our friendship, he is usually a upstanding member in the neighborhood. While it is unfortunate that he has made some bad decisions resulting in this case. While I was surprised to hear of the misconduct, it comes to no surprise that he has accepted responsibility for his actions. I truly believe that as we move forward, he will emerge a better person. In closing, James expressed a deep sense of remorse in making such a serious mistake and I truly believe in his ability to change.

It is my sincere hope the court takes this letter into consideration at the time of his appeal hearing. Despite the current case, I still believe James to be an honorable individual, a valuable member of my community, and a great human being.


Sincerely,

Adari Perkins Sr.

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                          Mon, Oct 12, 2020 at 12:31 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 Gmail

sailz on 60hz <kelsilawrence407@gmail.com>

---

## Fwd: Character letter from J-Low (just in case you can't view the 1st file)
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                           Wed, Sep 30, 2020 at 8:29 PM
To: kelsilawrence407@gmail.com

    ---------- Forwarded message ----------
From: **J-Low Moore** <awjlow1@gmail.com>
Date: Wed, Sep 30, 2020, 8:22 PM
Subject: Character letter from J-Low (just in case you can't view the 1st file)
To: <cmfgutta789@gmail.com>

My name is L'Jai'La Moore & I've known James Lawrence since 2010. We met when I was in college & at the time I was pursuing my degree & also a career as a rap artist. James was one of the first people who recognized my talent. He told me to never give up & he offered his help to assist me in becoming better at my craft. Ever since then we have become great friends, working together to help build each other's careers. James is an intelligent, talented, well-kept, loyal, and mannerable young man. He respects himself & others at all times. Since the first day we met he has always been a great friend to me; he's like a brother. Whenever I need help or advice no matter the time or day he always answers. James has 4 beautiful kids. He loves & takes care of them no matter what. He loves & supports all of his friends and family. James does not only help his friends and family, he also helps his community & other's that people may call strangers. His heart is kind & pure. We are asking the judge for favor & mercy. Please give him a chance to show you how great of a person he is, thank you.

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                                  Mon, Oct 12, 2020 at 12:30 PM
To: tajalawrence13@gmail.com

  [Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd: Covid release for James Lawrence
3 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                    Wed, Sep 30, 2020 at 7:24 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **CoalCash Blac** <ccc.hotc@gmail.com>
Date: Wed, Sep 30, 2020, 7:08 PM
Subject: Covid release for James Lawrence
To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

To whom it may concern,

Please release James Lawrence. He is not a threat to society and will be extremely productive upon release. I've known him for years and he's always been a stand up individual that would give you the shirt off his back. He often did food drives for the homeless in Brightmoor Michigan when he wasn't incarcerated. He has young kids, family and friends that miss him dearly. His family needs him due to the current situation that we all are going thru as a country. He will be way more productive out than in. Please find it in your heart to free James.

Thank you

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                           Mon, Oct 12, 2020 at 12:32 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                           Tue, Oct 13, 2020 at 2:15 PM
Draft

[Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Fwd: Letter
2 messages

**Cmf Gutta** <cmfgutta789@gmail.com>                    Thu, Oct 1, 2020 at 5:11 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: <tanisha.davis30.td@gmail.com>
Date: Thu, Oct 1, 2020, 9:37 AM
Subject: Letter
To: <Cmfgutta789@gmail.com>

To whom it may concern I've known James Lawrence for 15 years.He has been a close family friend. I watch him grow into an awesome father,amazing son,brother,and a loyal friend.Through  out the years anytime I've known him rather it was family friends or strange on the street if they needed James he was their with no questions asked I know James to be honest dependable and responsible their is not another person if their is another that deserves to be home James is the glue to his family he is very loved by his family especially his children.
　　　　　From Tanisha Davis
Sent from my iPhone

**sailz on 60hz** <kelsilawrence407@gmail.com>                    Mon, Oct 12, 2020 at 12:29 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 **Gmail**

sailz on 60hz <kelsilawrence407@gmail.com>

---

## Fwd:
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>
To: kelsilawrence407@gmail.com

Sun, Oct 4, 2020 at 4:53 PM

---------- Forwarded message ---------
From: **Kmoni Bryant** <kmoni44@gmail.com>
Date: Sun, Oct 4, 2020, 4:51 PM
Subject:
To: <cmfgutta789@gmail.com>


Dear  Hon Judge Roberts my name is Omoni I been knowing James Lawrence for a little over 9 years and never had a problem with him he is a good guy as well as a good father and he loved his five children that need him I have my own cleaning business and James will be more then proud to come help me out with my company and I can almost promise you that James will be on the right track

---

**sailz on 60hz** <kelsilawrence407@gmail.com>
To: tajalawrence13@gmail.com

Mon, Oct 12, 2020 at 12:29 PM

[Quoted text hidden]



 **Gmail**

sailz on 60hz <kelsilawrence407@gmail.com>

---

## Fwd: Character Letter
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                      Fri, Oct 2, 2020 at 4:16 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Brittainy Bond** <bizzie4610@gmail.com>
Date: Fri, Oct 2, 2020, 10:55 AM
Subject: Character Letter
To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

## To whom this may concern,

**I am writing this letter today on behalf of James Lawrence. James has always been the type of person to help anyone in need. Hardworking man trying to provide for his kids and family. Very respectful and love to provide help in any way he can for his community. He loves God and had a heart of Gold! His children & family need him. No child should have to live in this world without their father. Very positive person and will give someone his last.  Wise beyond his years and although no one is perfect, James has displayed what a man should be hardworking, determined and a leader in his community. I pray that he can get home and be the father, son, friend and uplifting citizen I know him to be.**

**Sincerely,
Brittainy Bond**

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                            Mon, Oct 12, 2020 at 12:27 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd: Character Letter
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                    Sun, Oct 4, 2020 at 5:06 PM
To: kelsilawrence407@gmail.com


---------- Forwarded message ----------
From: **Dj King** <lamontking1928@gmail.com>
Date: Sun, Oct 4, 2020, 5:01 PM
Subject: Character Letter
To: <cmfgutta789@gmail.com>


James Lawrence is a loving father, brother and uncle he has done a lot of things for the community and the homeless that we can prosper from. A lot of people won't have that mindset to think about others and he always been the provider for our family and it takes a honest and stand up man to take that responsibility.

Sent from my iPhone

---

**sailz on 60hz** <kelsilawrence407@gmail.com>               Mon, Oct 12, 2020 at 12:26 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 Gmail

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Fwd:
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                      Sun, Oct 4, 2020 at 5:07 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ---------
From: **Randy Johnson** <rjohnson393@yahoo.com>
Date: Sun, Oct 4, 2020, 5:01 PM
Subject:
To: <cmfgutta789@gmail.com>


James was and always will be a supportive family member that always will put his family first. He is very dependable and
responsible for his success and failures. James take care of his kids, friends and their friends only because he was a
genuine heart and love to se others do good in life.


Sent from Yahoo Mail for iPhone

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                             Mon, Oct 12, 2020 at 12:25 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Fwd: Character letter
2 messages

**Cmf Gutta** <cmfgutta789@gmail.com>
To: kelsilawrence407@gmail.com

Sun, Oct 4, 2020 at 8:12 PM

---------- Forwarded message ----------
From: **Deangelo Scott** <deangeloscott21@gmail.com>
Date: Sun, Oct 4, 2020, 8:03 PM
Subject: Character letter
To: Cmfgutta789@gmail.com <Cmfgutta789@gmail.com>

To your honorable judge Roberts my name is Deangelo Scott. I am writing to provide a character reference for my brother James Lawrence. Me and my brother both grew up in the same house, went to the same schools, played sports together everything. We even talked about our future goals and things we want to accomplish in our lives my brother has a caring nature and he would give the shirt of his back if needed. He will help anyone out with no problem. He is a humble man, and is great father to his kids. He enjoys life and stir away from any trouble possible. I feel he was caught up in a situation that had nothing to do with him. James is the heart, soul and backbone of the family. His absence in our family has hit each one of use very hard. And life has not been the same since I ask that you give him this chance to come home and be here for his kids and his family especially during this time with COVID. He will miss very special moments of his children lives, and he will miss to new births to the family. I have watched many family members and friends of the family pass away due to COVID and it will crush us if something was to happen to him while he's incarcerated due to this. Please I'm begging you give him this chance to be back in his kids lives and be back home with good health we need him home it's to many people dying from this and and him being in prison is not the place for him at all. Thank you

**sailz on 60hz <kelsilawrence407@gmail.com>**
To: tajalawrence13@gmail.com

Mon, Oct 12, 2020 at 12:25 PM

[Quoted text hidden]



 Gmail

sailz on 60hz <kelsilawrence407@gmail.com>

---

## Fwd: James Lawrence character letter
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>
To: kelsilawrence407@gmail.com

Sun, Oct 4, 2020 at 5:36 PM

---

---------- Forwarded message ----------
From: **misosa** <misosametro@gmail.com>
Date: Sun, Oct 4, 2020, 5:31 PM
Subject: James Lawrence character letter
To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

*To the Honorable Judge Roberts,*

*Hi, my name is Damiso I'm James's little cousin. My entire family has been distraught since the day of his incarceration, I'm a lot younger than James so over the years he acted as a mentor, a guide and role model since I could remember. Even when he didn't make the best decisions in his life he never let that come in between his responsibilities  as being the family man that he is. He always make sure I am on the write path and I am staying out of trouble. I can only return the favor to his sons and daughters because I feel I owe it to him. I know his children deserves to have him in there lives because he is a good person so I know he is going to be a even better father.*
*I have always been inspired by his drive and willingness to help others even when it henders his own situation.*
*I remember once when I was starting back school and James took time out his day*
*To take me shopping and out to eat in order to motivate me and keep my spirits up for the upcoming school year. He doesn't know this but that day really helped me get my goals in-line. Ever since I've been on the straight and narrow. I saddens me that I have been robbed of the relationship with my big cousin, and his kids have been robbed of a relationship with their father. I just hope this situation can be reconciled before the damage is to much to return from. I hope you can see the passionate, friendly, outgoing, loving, family oriented side of James so that you can see what makes us love and miss him so much.*
*Thank you for even taking the time to read this and taking my thoughts into consideration. I write this with high hopes, so again thank you for your time.*

---

**sailz on 60hz** <kelsilawrence407@gmail.com>
To: tajalawrence13@gmail.com

Mon, Oct 12, 2020 at 12:25 PM

[Quoted text hidden]



Angel Rhodes
7758 Burnette
Detroit MI, 48235

Dear Honorable Judge Roberts,

 I greatly appreciate being able to right this letter on behalf of Mr.  James Lawrence, as a friend of James
for over 7 years now I am more than happy to express why I am in support for his release. For myself
many times I have personally struggled financially but most important mentally and I could always count
on Mr. Lawerence for that mental support which included getting me out of the draining environment
that caused the emotional stress at the time with fresh air and encouraging words to immerse while a
made it through my tough battles. When you are going through a depression and battling a lot of
thoughts that may become dangerous there are a lot of people who may state that they are a phone call
away but Mr. Lawerence was actually a phone call away. It is definitely my honor to vouch for him
during his tough times as he was a great friend through mine. I do believe that we learn from our
mistakes and grow as people, I have personally witness Mr Lawrence do both.

Besides the fact that  Mr Lawerence is a great friend towards me and others, very caring and selfless, I
have also witnessed him as a super loving and amazing father. I am very sure that this will not be the
first and definitely not the last time that you hear of the wonderful parent that he is. I believe it will be a
significant reunion for not only him but also for his children to be apart of his life again. As a single
mother I am personally able to visualize the damage that is created of separated parents and children.
The determination that Mr Lawerence has to better himself in order to be in the life of his children is
also what I believe to be a huge motivation.

In addition to Mr. Lawerence being a great friend to myself and a even better father intelligent person
who is constantly looking for ways to better himself. I genuinely hope the court may take my letter into
consideration in granting my friend of servers years a second chance. I promise that he does great with
second chances and values starting over.

Sincerely,

Angel Rhodes



**M** Gmail

sailz on 60hz <kelsilawrence407@gmail.com>

---

**Fwd: James Lawrence**
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                    Sun, Oct 4, 2020 at 8:19 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ---------
From: **paidcam** <tchattam@gmail.com>
Date: Sun, Oct 4, 2020, 8:17 PM
Subject: Fwd: James Lawrence
To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

> 

Dear honorable judge Roberts I'm writing on behalf of James Lawrence. My name is Roneice Chattam I am a close friend
of his and family. Respectfully hoping that he can be released soon he has small children who needs and misses him very
much. They cry for him they need him. He is a very hard working man and I know that with him being released to continue
to watch his children grow will definitely make a big impact on him. And also our family. I will continue to encourage him to
do right and stay on the right path for his family sakes. James has a lot of love out here and we all truly miss his
presence. I am going to assist with his transportation I will assist in helping him look for work and also to get back in
school being a better man and a role model for his children is all we discuss. Can you please find it in your heart to get
him home as soon as possible to begin a better life for him and his children. Thank you.
--
_____sweetlady


--
_____sweetlady

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                          Mon, Oct 12, 2020 at 12:15 PM
Draft To: tajalawrence13@gmail.com

[Quoted text hidden]



 Gmail

**sailz on 60hz <kelsilawrence407@gmail.com>**

___

## Fwd: Letter
2 messages

___

**Cmf Gutta** <cmfgutta789@gmail.com>
To: kelsilawrence407@gmail.com

Sun, Oct 4, 2020 at 8:11 PM

---------- Forwarded message ----------
From: **Jamal Carter** <dexterred313@yahoo.com>
Date: Sun, Oct 4, 2020, 7:03 PM
Subject: Letter
To: <cmfgutta789@gmail.com>


To whom this may concern,

Hello, my name is Jamal Carter, I have known James for the majority of both of our lives. He is a good man, a great son, a great brother, and a great father to all of his children. Although he hasn't made all of the best decisions, he deserves a second chance as everyone should. His family and friends all need him for the love and companionship that he has been missing and needs. I most definitely will encourage him to do the right thing, as always, help him get a job, and make sure he's maintaining a positive lifestyle.

Sent from Yahoo Mail for iPhone

___

**sailz on 60hz** <kelsilawrence407@gmail.com>
To: tajalawrence13@gmail.com

Mon, Oct 12, 2020 at 12:24 PM

[Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd: To whom this concern;
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>
To: kelsilawrence407@gmail.com

Mon, Oct 5, 2020 at 4:33 PM

---------- Forwarded message ---------
From: **Aarica Sullivan** <aaricasullivan@yahoo.com>
Date: Sun, Oct 4, 2020, 11:54 PM
Subject: To whom this concern;
To: <Cmfgutta789@gmail.com>

# To whom this concern;

Hi my name is Erica Cranford I'm James girlfriend. I been know James for 6 years he is a caring , warm hearted , loving person , hard worker and amazing father to his children's. I feel with him coming home will impact his family and I by taking care of his kids and into acting with them on a daily basis and seeing his mother, sisters and nieces , nephews and I. He wouldn't jeopardize his freedom to be away from his family or home. I know he have grown into young men who knows he have responsibilities and family to take care of. I know by me being there with him I can keep him on right track by coming home going to work , spend time with his kids, staying at home and not being around wrong people and being a family men.

Sent from my iPhone

---

**sailz on 60hz** <kelsilawrence407@gmail.com>
To: tajalawrence13@gmail.com

Mon, Oct 12, 2020 at 12:13 PM

[Quoted text hidden]



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Fwd: Judge
2 messages

**Cmf Gutta** <cmfgutta789@gmail.com>                     Mon, Oct 5, 2020 at 4:34 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ---------
From: **Kristina Goldsmith** <kristinajgoldsmith75@gmail.com>
Date: Mon, Oct 5, 2020, 9:03 AM
Subject: Judge
To: <cmfgutta789@gmail.com>

Hi judge Roberts I'm writing this letter on the behalf of James Lawrence I'm a proud mother of his youngest son kingston and If there's any chance of him coming home that will be good we need james here with us he missed 3 years of my son life and everyday my son ask about his father and how he want to see him and right now he's to young to understand on why his dad isn't here with us I just keep my faith in god hoping that he will be home soon and that he will be able to make memories with our son and make up for time lost.Im sure that James has plenty time to realize that his actions wasn't worth his being away from his kids,family and friends James is a caring person and has a big heart and I'm 100 percent sure that James has learned his lesson and that he wouldn't do it again . James has 5 children that's needs him we all just want him home so he can enjoy these moments with his family.


Sent from my iPhone

---

**sailz on 60hz** <kelsilawrence407@gmail.com>             Mon, Oct 12, 2020 at 12:10 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



To whom it may concern,

When I first met the gentleman currently incarcerated he treated me with such hospitality, generosity and kindness that to this day I still haven't forgot his graciousness. He was my last appointment on long hot summer day and my only thought before I arrived at his home was how I needed to quickly get in and out so I could get home and relax. Before I knew it, the gentleman had prepared us some appetizers; served a couple drinks and then preceded to cook one of the best steak dinners I've ever had in my life. He didn't have to do ANYTHING. His business was enough generosity but his ability to not only see I was famished but to proceed on cooking me a steak dinner is something only a truly selfless human being does. He refused to take no for an answer and honestly who turns down a delicious steak dinner after working a long summer day? His charisma, generosity and entrepreneurial spirit will change this world one day with his positive light. Second chances aren't for everyone but this gentleman is absolutely worth giving a shot.

If he is seeking employment upon release, I WOULDN'T THINK TWICE ABOUT HIRING HIM.

Thank you for your consideration,

Michael Finney
Co-Owner/Founder
Dry Green Cleaning Staff
27595 Berkshire Dr. Southfield MI 48076
Phone: 734.707.8704
www.drygreencleaning.com
drygreencleaning@gmail.com
drygreencleaningmi@gmail.com

30

 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Fwd: Character Letter
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                    Mon, Oct 5, 2020 at 4:35 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Durrell Jackson** <durrell.jackson95@icloud.com>
Date: Mon, Oct 5, 2020, 11:47 AM
Subject: Character Letter
To: <Cmfgutta789@gmail.com>

To Hon judge Roberts

James is one of my favorite cousins, because of his loyalty and kindness if I needed anything he was there with out a Question.

James a great father very hands on with his kids. I look him! When I need advice I can always call on him to help me with any situation I was in.

Being around James you will laugh and have a good time he just have a good positive vibe and energy when you around him.

Words really can't explain how good of a person/father James is  If someone actually took the time out and Call and check on you and see how your day going and if you need anything got to have a good heart just don't happen everyday.


Sincerely
Durrell L Jackson

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                          Mon, Oct 12, 2020 at 12:08 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 **Gmail**

**sailz on 60hz** <kelsilawrence407@gmail.com>

---

## Fwd: Character letter
2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>
To: kelsilawrence407@gmail.com

Mon, Oct 5, 2020 at 4:36 PM

---------- Forwarded message ----------
From: **Esh Law** <ieshalawrence12@gmail.com>
Date: Mon, Oct 5, 2020, 1:32 PM
Subject: Character letter
To: <cmfgutta789@gmail.com>


To whom it may concern


My name is iesha lawrence and i am writing this leteer on behalf of my brother james lawrence.

   He is a good father to his 5 children who he was and still is actively in their lives daily and they miss and need their father to mature into the young men and women they are becoming, as well as his nieces and nephews.
   He also  is a great help to our community. He has gave back to our community by providing food, clothes, and even shelter at times. He has a big heart and he loves everyone. He brings a ray of sunshine and happiness with his presence . Its always love, laughs , and fun times when hes around, since he has been absent out of our lives things are different and a big part of all of lives are missing.
   In conclusion he is a god fearing man who means no harm and all good to our community and the people in it and i believe in second chances with that being said please consider releasing him.
                   Thank you for your time and consideration!

---

**sailz on 60hz** <kelsilawrence407@gmail.com>
To: tajalawrence13@gmail.com

Mon, Oct 12, 2020 at 12:08 PM

   [Quoted text hidden]



 **Gmail**

sailz on 60hz <kelsilawrence407@gmail.com>

**Fwd: Hello, Judge Roberts my name is Tonisha Turner, 34 years old . Mother of one and a small business owner of a cleaning service in Detroit. I'm writing this letter to shine a little light and positivity about a young man name James Lawrence. Knowing him since 2005 to be a great writer how loves his family. He's a great person who loves music and a very talented young man. I think when he comes home ( should go back to school ). See wherehis writing can truly take him in life . Judge I'm really hoping that James could come home and be with his children. Improve his life to his greatest potential. He has my support and help & hand when needs it . Helping him find a job, a babysitting or even a ride . Judge I pray that you could give him another chance. To make up with life . His children,god, family and the community. SincerelyTonisha Turner**

2 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                              Mon, Oct 5, 2020 at 7:08 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Key Turner** <keyturner03@gmail.com>
Date: Mon, Oct 5, 2020, 6:28 PM
Subject: Hello, Judge Roberts my name is Tonisha Turner, 34 years old . Mother of one and a small business owner of a cleaning service in Detroit. I'm writing this letter to shine a little light and positivity about a young man name James Lawrence. Knowing him since 2005 to be a great writer how loves his family. He's a great person who loves music and a very talented young man. I think when he comes home ( should go back to school ). See wherehis writing can truly take him in life . Judge I'm really hoping that James could come home and be with his children. Improve his life to his greatest potential. He has my support and help & hand when needs it . Helping him find a job, a babysitting or even a ride . Judge I pray that you could give him another chance. To make up with life . His children,god, family and the community. SincerelyTonisha Turner
To: <cmfgutta789@gmail.com>

Hello, Judge Roberts my name is Tonisha Turner, 34 years old . Mother of one and a small business owner of a cleaning service in Detroit. I'm writing this letter to shine a little light and positivity about a young man name James Lawrence.

Knowing him since 2005 to be a great writer how loves his family. He's a great person who loves music and a very talented young man. I think when he comes home ( should go back to school ). See wherehis writing can truly take him in life . Judge I'm really hoping that James could come home and be with his children. Improve his life to his greatest potential. He has my support and help & hand when needs it . Helping him find a job, a babysitting or even a ride . Judge I pray that you could give him another chance. To make up with life . His children,god, family and the community. SincerelyTonisha Turner

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                          Mon, Oct 12, 2020 at 12:05 PM
To: tajalawrence13@gmail.com

[Quoted text hidden]



 Gmail

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd: Letter
3 messages

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                   Wed, Oct 7, 2020 at 4:56 PM
To: kelsilawrence407@gmail.com


---------- Forwarded message ----------
From: **Mike George** <michaelgeo25@gmail.com>
Date: Wed, Oct 7, 2020, 6:30 AM
Subject: Letter
To: <cmfgutta789@gmail.com>



Michael George
Detroit, MI 48223

   Dear Honorable Judge Roberts, I'm writing in response to inmate James Lawrence's early release from federal custody. Amid the COVID epidemic my friend has already contracted the deadly virus once, and with a looming 2nd wave in sight, his compromised immune system he just isn't protected while incarcerated.

   Mr. Lawrence is a pillar to his family, his 5 kids and friends alike. If granted early release, I'm positive he will become a model citizen and exceptional role model.  We will establish a support system around him to ensure his safety and effectively keep him on a straight and narrow path. If you could find in your heart to release James, I'm certain he won't let any us down.


Sincerely
Michael A. George

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                           Mon, Oct 12, 2020 at 12:03 PM
To: tajalawrence13@gmail.com


[Quoted text hidden]

---

**sailz on 60hz** <kelsilawrence407@gmail.com>                           Mon, Oct 12, 2020 at 12:04 PM
To: tajalawrence13@gmail.com


[Quoted text hidden]

㉞

 **Gmail**

sailz on 60hz <kelsilawrence407@gmail.com>

---

## Fwd: Letter
1 message

---

**Cmf Gutta** <cmfgutta789@gmail.com>                                      Wed, Oct 7, 2020 at 4:58 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ---------
From: **Ciarra Jefferson** <jeffersonciarra5@gmail.com>
Date: Wed, Oct 7, 2020, 8:22 AM
Subject: Letter
To: Cmfgutta789@gmail.com <Cmfgutta789@gmail.com>


859 Webb
Detroit Michigan 48202
Ciarra jefferson

October 4,2020

RE James Lawrence

Dear Honorable Judge, Roberts

   I am writing this letter to my child father,James Lawrence who has been convicted in a case
that shook his whole family up, I have known this man for over 10 years. He is very sweet
and kind hearted man that love his family.


James is a good father and deserves to be at home with his family and kids. I am the mother
of his daughter Journee Lawrence and she love her father dearly their bond is unbreakable
even from far away, it's hurt her that she can't be with him daily and she to young to
understand the situation. I also have a son that mr Lawrence care for his lost his dad some
years ago and Mr Lawrence have been by his side every since treat him like one of his
own.Not only is he a great father I have seen mr Lawrence giving back to the community
helping the homeless.

I would like to vouch for his good behavior in the case that he has been deeply accused in.
His family is comply torn apart because of his actions. But no one is prefect this man have
been though ups and downs and may have not made the best decision but he is overall a
great man deserves to be home with his children

I would like you to consider this letter before passing any judgements.

Thankfully



 Gmail

sailz on 60hz <kelsilawrence407@gmail.com>

## Fwd: Stephenie warr
1 message

**Cmf Gutta** <cmfgutta789@gmail.com>                                    Sun, Oct 4, 2020 at 5:36 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **stephenie warr** <warr.stephenie@yahoo.com>
Date: Sun, Oct 4, 2020, 5:33 PM
Subject: Stephenie warr
To: <Cmfgutta789@gmail.com>

Good Afternoon, this is to whom this may concern. My name is stephenie warr I'm age 26 I'm friends with James Lawrence we have been friends for approximately 10 years. I just want to speak on my behalf on how much James is a great friend and a awesome father, I speak to James at least once a week and he seem to be in such a better state of mind I personally think he's ready to come home to continue to be with his children and family. If any other questions please feel free to call me (313)828-7423 or email warr.stephenie@yahoo.com

Sent from my iPhone



 Gmail

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Fwd:
1 message

**Cmf Gutta** <cmfgutta789@gmail.com>                                      Thu, Oct 1, 2020 at 5:10 PM
To: kelsilawrence407@gmail.com

---------- Forwarded message ----------
From: **Lateasha Lake** <lateasha567@gmail.com>
Date: Thu, Oct 1, 2020, 2:04 AM
Subject:
To: cmfgutta789@gmail.com <cmfgutta789@gmail.com>

Hi my name is Lateasha Lake I am the mother to james Lawrence children Semaj and Braylen Lawrence. I have been knowing James since the age of 13 every since we had our first child he has been nothing but support. He did not go in and out of jail. He was never a bad guy. He has never been away from my kids and every since he has been gone it's been hard on me, his kids ask every day when he is coming home. He has had COVID twice in there it's unsanitary it's unfair and thank god he was able to fight through it. I know he has served his time and that it's safe to let him come home to his family. I firmly believe he has learned his lesson and that it's only fair he does not miss any more months or years being away from his children. Please release James we need him.



 **Gmail**

**sailz on 60hz <kelsilawrence407@gmail.com>**

## Character letters
1 message

**sailz on 60hz <kelsilawrence407@gmail.com>**                          Mon, Oct 12, 2020 at 12:53 PM
To: tajalawrence13@gmail.com

Your honorable Judge Roberts
I am the mother of James Lawrence; Miss Kelsi Lawrence
I am writing to you for the concern of my son's health and safety.... I'm extremely worried about this virus Covid 19. Mr.
Lawrence has already tested positive for this deadly virus, Fci Elkton has done very little to nothing at all to keep my son
nor the inmates quarantined or safe. My son is still presenting symptoms of this illness, and the staff has done nothing.
He keeps asking to be be tested, and the staff gets upset, talks crazy, and will not re-test him.
I really don't feel like death should be his sentence for a non- criminal crime. Due to the lack of compassion of the staff.
Elkton treats their inmates inhumane. Please I plea the blood of Jesus that you can find it in your heart to release James
Lawrence to his family. Where at least he'll be surrounded by his loved ones.

Sincerely
Miss Kelsi Lawrence



 Gmail

**sailz on 60hz <kelsilawrence407@gmail.com>**

---

## Fwd: Character Letter
1 message

---

**Cmf Gutta** <cmfgutta789@gmail.com>                         Thu, Oct 1, 2020 at 12:09 AM
To: kelsilawrence407@gmail.com

---------- Forwarded message ---------
From: **Juiwuanda Golder** <miracled20@icloud.com>
Date: Thu, Oct 1, 2020, 12:08 AM
Subject: Character Letter
To: <cmfgutta789@gmail.com>


Juiwuanda Golder October 1 ,2020
I have known **James Lawrence** for six years  and I can assure you that these recent circumstances are indicative of the
kind of person he is. James made a terrible mistake, for which he is tremendously sorry, and I can only hope that will
heavily on your mind when you make your decision.
James has been working to make amends for his infractions, which is evident by**{ways in which convict is attempting
to make amends}**. He is deeply remorseful, and only wants to do what he can to at least try to make things better for
everyone involved.
James is a father and his children need him to be a part of their lives. So I ask that you please use your best judgment,
but make it possible that James can return to his family as soon as possible.

Sincerely Juiwuanda Golder





NAME: James Laurence
REG#: 55509 - 039
Federal Correctional Institution Elkton
P. O. Box 10
Lisbon, Ohio 44432

7020 0090 0001 5033 7991

CERTIFIED MAIL

U.S. MARSHALS

Legal Mail

PRIORITY
★ MAIL ★

TRACKED
★ ★ ★
INSURED

UNITED STATES
POSTAL SERVICE®
For Domestic Use Only

U.S. District Court
Office of the Clerk
231 W. Lafayette Blvd.
Detroit, MI 48226

CORRECTIONAL INSTITUTION

OCT 2 0 2020