UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

   Plaintiff,        Case No. 17-20259

v.             Hon. Victoria A. Roberts

James Lawrence,

   Defendant.

---

## United States' Response Brief Opposing Defendant's Motion to Reconsider or, Alternatively, Second Renewed Motion for Compassionate Release [ECF Nos. 103, 107]

---

### Introductory Summary

Defendant James Lawrence's motion is styled in the alternative: to reconsider or as a second, renewed motion for compassionate release. The distinction matters. If this is a motion for reconsideration, which is how Lawrence's *pro se* motion is styled, Lawrence did not identify any palpable defect by which the Court has been misled when it denied his motion for compassionate release. LR 7.1(h). If this is a second, renewed motion, which is how court-appointed counsel styled the supplemental brief, the standard of review is different, but the result should be the same. Lawrence has not raised any new issues that the Court has not previously considered. The Court should again deny Lawrence's motion.

The government incorporates by reference its previous briefing into this response. *See* ECF Nos. 79, 85, 96.

## I.   Lawrence has not met the standard for a motion for reconsideration.

### A. <u>The standard of relief for a motion for reconsideration is found in Rule 7.1(h)(3).</u>

The Court denied Lawrence's renewed motion for reconsideration October 7, 2020. ECF No. 102, PageID.854-62. Lawrence filed a motion for reconsideration on October 20. ECF No. 103, PageID.863. The Court appointed counsel, and Lawrence filed a supplemental brief in support of his motion for reconsideration, or alternatively, a second renewed motion for compassionate release. ECF No. 107, PageID.967. In neither filing did Lawrence articulate new arguments or information that the Court has not already considered.

The Court's inquiry begins with the standard in LR 7.1(h). First, the motion cannot simply present the same issues already addressed by the Court. Second, Lawrence must "demonstrate a palpable defect" that misled the Court and the parties, which, if corrected would result in a different outcome in the case. Lawrence cannot meet this standard. He presents only issues that have already been addressed by the Court, and he does not demonstrate a palpable defect by which the Court and parties have been misled. Instead, he disagrees with the Court's analysis and conclusion. But that is not the standard.

**B. The Court's analysis must be particular to Lawrence. Comparison to other district court judge's opinions does not demonstrate a palpable defect and does not constitute new evidence.**

The Court's denial order stated it was unaware of any other cases where a defendant was granted compassionate release when obesity was the only medical condition. ECF No. 102, PageID.858. In response, Lawrence provides four examples of defendants who were released when obesity was the only medical condition at issue. What Lawrence ignores is that each decision considered additional factors when making its determination and not just whether obesity was sufficient, on its own, to constitute an extraordinary and compelling reason for release. Indeed, in this case, the Court acknowledged that obesity is a CDC-listed risk factor; however, after analyzing whether Lawrence's obesity puts him at greater risk, the Court concluded it did not. *Id.* at 859. This analysis was specific to Lawrence.

The government did a quick review of compassionate release cases in this district in which a defendant was denied compassionate release when he was obese but also had other medical conditions. A rough estimate is that there have been approximately 61 cases in which an obese defendant with other medical conditions was denied compassionate release. At least 12 of those are inmates at Elkton FCI, where Lawrence is housed, and at least six of the 61 were obese and also had recovered from Covid-19. These numbers do not include Lawrence. *See* Exhibit 1: Table of Cases in EDMI. What this information highlights is that focusing on only

one facet of a defendant's profile detracts from a broader, overall review of several factors at play. Just as the other 61 decisions where obese defendants were denied compassionate release do not lead the Court to a particular result in this case, Lawrence's four examples of defendants who were obese and granted release is informative, but certainly not dispositive. This Court's specific decision as to how Lawrence's obesity should be viewed when considering all of the other factors in his case is supported by sound reasons and informed judgment and is not palpably defective.

As noted in a previous government brief, there is no notation in Lawrence's medical records that he is "obese," nor is there a calculation of Lawrence's BMI. ECF No. 96, PageID.647-48. There is one record of his weight being 206 pounds, and his height being 67 inches, which when calculated, equals a BMI of 32.3. *See* Exhibit 2: Updated Medical Records (under seal). However, the records do not indicate that his current weight has been a chronic problem – in fact, the records show it has not been a problem. Nor does he have any of the typical attendant health problems that often occur with long-term morbid obesity, such as hypertension, diabetes or cardiovascular issues. Absent the notation about his weight of 206 pounds, there is no other record to support that his "obesity" is chronic and unmanageable with medicine, diet and exercise such that it is an "extraordinary and compelling" medical reason to justify release. Even if the Court found that Lawrence

passed the first hurdle of the analysis based on his BMI of 32.3, medical eligibility is not an entitlement to release, particularly when it is unclear whether the health condition is temporary and manageable vs. chronic and unmanageable. Lawrence's medical records show that BOP has treated him for various other ailments and all of his medical issues were addressed. There is no reason that a slightly elevated BMI cannot also be addressed.

**C.** **Lawrence continues to supplement the record on the issue of whether he can get Covid-19 twice, but this is not a new argument, nor is the Court's conclusion that re-infection is unlikely a palpable defect justifying a different result in the case.**

The Court's determination that re-infection of Covid-19 is unlikely or uncertain is not erroneous or even conclusory. Once again, this is not a new argument, and it is not a palpable defect. Rather, the Court's conclusion is reasonable and supported. The Order references two district court case examples that concluded the science regarding re-infection is inexact and unclear. ECF No. 102, PageID.859. The science remains inconclusive. The CDC advises that "[t]here is no evidence to date that clinically recovered persons with persistent or recurrent detection of viral RNA have transmitted SARS-CoV-2 to others." *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Persistent-or-Recurrent-Positive-Tests.

Lawrence has already had Covid-19, and he did not suffer severe health symptoms; he was, in fact, asymptomatic. He has since tested negative twice. As one

court in this district recently held, "[t]he risk of contracting COVID-19 a second time and potentially developing a more severe response is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission." *United States v. Bland*, Case No. 18-20555, R. 44: Opinion and Order Denying Compassionate Release, 269 (E.D.MI, May 28, 2020) (Goldsmith, J.) (denying compassionate release to an inmate who "tested positive for COVID-19 . . . experienced mild symptoms, recovered, and was released back to his unit"). And while is it unknown whether Lawrence could be re-infected with COVID-19, re-infection of similar type viruses is unlikely. *See* http://cdc.gov/coronavirus/2019-ncov/hcp/faq.html. So whether considered alone or in combination with the Covid-19 pandemic, Lawrence's age (30 years old) and lack of serious medical conditions do not constitute extraordinary and compelling reasons for release. *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5–*6 (E.D. Mich. May 15, 2020). The Court's conclusion on this issue should be affirmed.

### D. <u>The Court addressed the § 3553(a) factors.</u>

In its order denying release, the Court concluded:

Since Lawrence fails to prove there is an extraordinary and compelling reason for his release under 18 U.S.C. § 3582(c)(1)(A) and fails to demonstrate he would not be a danger to the community if released, no § 3553(a) factor is sufficient to warrant Lawrence's release.

ECF No. 102, PageID.862. The Court stated that there was no § 3553(a) factor applicable that could justify release because of Lawrence's dangerousness and his

failure to present extraordinary and compelling reasons in support of release. Just as a court is not required to go through every § 3553(a) factor on the record at sentencing, neither does a court have to go through each § 3553(a) factor when entering a sentencing modification order. In this case, the Court conducted a thorough analysis of the § 3553(a) factors, both in its written order regarding a sentence modification, but also in its original review of the factors on the record at sentencing. *Jones* does not require more.

*United States v. Jones,* the recent Sixth Circuit decision addressing compassionate release motions, notes that a district court must consider the record, including the § 3553(a) factors, and render a sentencing modification decision that reflects its review. *United States v. Jones,* 980 F.3d 1098, 1114 (6th Cir. 2020). *Jones* directs that if the record, as a whole, shows the court took relevant factors into account, "a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor." *Id. Jones* further explains that what the district court states about the § 3553(a) factors when it imposed sentence as well as what it states when considering a sentence modification, is relevant on review. *Id.*

In its order denying compassionate release, this Court considered the following:

(1) Lawrence's age (30 years old), criminal history (six previous felonies), discipline record while incarcerated, educational classes while

incarcerated, and BOP's risk assessment of recidivism, which was determined to be high risk. ECF No. 102, PageID.855.

(2) Lawrence had Covid-19, was asymptomatic, and has tested negative twice since then. ECF No. 102. PageID.855-56.

(3) Lawrence's dangerousness compared to his obesity as a risk factor. ECF No. 102, PageID.857-59,

(4) The Court did look to § 1B1.13's policy statement but also analyzed Lawrence's characteristics pursuant to 18 U.S.C. § 3142(g), which include most of the § 3553(a) factors: the nature and circumstances of Lawrence's offense; the weight of the evidence; the history and characteristics of Lawrence himself; and the nature and seriousness of the danger to any person or community that would be present if Lawrence were released. ECF No. 102, Page ID.860-61.

(5) Lawrence's nature and characteristics, including his criminal history, noting that he violated probation several times. *Id.*

(6) The seriousness of Lawrence's crime. *Id.*

(7) The length of time Lawrence has served compared to his sentence, stating that release would not "promote respect for the law, afford adequate deterrence, provide just punishment, or avoid unwarranted sentencing disparities," all pertinent to § 3553(a). ECF No. 102, PageID.861.

(8) The Court does say that § 3553(a) factors are "inapplicable," but explains that to mean that "no § 3553(a) factor [that Lawrence emphasizes] is sufficient to warrant Lawrence's release." ECF No. 102, PageID.862.

When the Court sentenced Lawrence, it also reviewed the § 3553(a) factors:

(1) The Court started with the guidelines followed by a list of the § 3553(a) factors. ECF No. 57, PageID.261.

(2) The Court found the crime Lawrence committed is serious. *Id.*

(3) The Court reviewed Lawrence's history and characteristics. ECF No. 57, PageID.262-63.

(4) The Court considered the deterrence factor at length. ECF No. 57, PageID.263-64.

(5) The Court summarized all that it considered and imposed sentence. ECF No. 57, PageID.264.

Whether the Court used the terminology *Jones* emphasized or which Lawrence argues is mandatory, the Court clearly reviewed every aspect of Lawrence's offense, characteristics, post-conviction conduct, his medical condition, and dangerousness. After all of that, the Court denied relief. In accordance with *Jones,* the Court "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking

authority." *Jones*, 980 F.3d at 1112–13 (citations omitted). And contrary to what *Jones* requires, this Court "penned a full opinion." *Id.*

The Court complied with *Jones,* there is no palpable defect, and Lawrence's motion must be denied.

### E. FCI Elkton's current statistics show that it is addressing the needs of the inmates and following Covid-19 protocols.

If it were a valid argument that any time there is a change in the number of Covid-19 positive inmates in a facility, an inmate has grounds to re-assert compassionate release, then any defendant in BOP custody could renew his motion any time a new case arose. This is not the standard, and such a practice would render a particularized analysis of compassionate release meaningless. The government accepts that the number of Covid-19 cases rises and falls in facilities, as it does in the larger community. However, referencing a change in a fluctuating number is not a sufficient basis for arguing that compassionate release is now more viable than it was in October when the Court considered Lawrence's previous request.

As of December 19, 2020, BOP's records, updated daily, show there are currently three inmates who are positive for Covid-19 at Elkton FCI. This is a decrease from the six positive cases in September and a further decrease from 347 positive cases in July. Approximately 892 inmates have recovered from Covid-19 there. Tragically, there have been nine deaths at Elkton FCI as a result of Covid-19; however, there has not been a death for over seven months.

https://www.bop.gov/coronavirus/. Thus, the Court's consideration of the conditions at Elkton FCI remains applicable. Lawrence has not presented any new evidence, nor has he revealed a palpable defect on which the Court and the parties relied that, if corrected, would yield a different outcome. LR 7.1(h).

II.     **If the Court considers this a substantive, third motion for compassionate release, Lawrence still has not presented any extraordinary and compelling reasons that he should be released.**

A. **Lawrence has not shown there is a basis for compassionate release.**

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), contains two overlapping requirements for scrutinizing an inmate's initial eligibility for release. First, an inmate must demonstrate that "extraordinary and compelling reasons" warrant a reduction in his sentence. *Id.* Second, release must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* That applicable policy statement *should* be USSG § 1B1.13, which contains various criteria related to a defendant's medical conditions, age-related issues, family circumstances, or other reasons, USSG § 1B1.13 cmt. n.1, and which requires that the defendant "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2). That policy statement should be binding here, as the analogous policy statement in USSG § 1B1.10 is for sentence reductions under 18 U.S.C. § 3582(c)(2). *See Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). Recently, however, a

Sixth Circuit panel concluded in *Jones*, 980 F.3d at 1102, 1108-09, that § 1B1.13 is not "applicable"—and thus does not apply at all—to defendant-initiated motions for compassionate release.

*Jones*'s analysis on that point was incorrect, and the government preserves for further review its argument that USSG § 1B1.13 is binding here and that Lawrence has failed to satisfy its requirements, because he is dangerous, a highly likely recidivist, and he is not at risk for a serious reaction to Covid-19. Further, as Judge Cook's concurrence made clear, the *Jones* panel's discussion of § 1B1.13 was dicta. *Id.* at 1116 (Cook, J., concurring). The only holding in *Jones* was that the district court there did not abuse its discretion in denying release based on the § 3553(a) factors. *Id.* So the remainder of the panel's opinion is not binding. *See Wright v. Spaulding*, 939 F.3d 695, 700–02 (6th Cir. 2019) (explaining that "only holdings" and "not dicta" are binding in subsequent cases).

But even if the Court were to follow the dicta in *Jones*, Lawrence has not satisfied the statutory requirement of showing that "extraordinary and compelling reasons" warrant a sentence reduction. Even if not mandatory, § 1B1.13 continues to "provide a working definition of 'extraordinary and compelling reasons,'" which can "guide" a district court's decision "without being conclusive." *United States v. Gunn*, ___ F.3d ___, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020). And even without § 1B1.13, the plain language of the compassionate-release statute

does not permit "a sort of Wild West" or allow "every district judge [to] hav[e] an idiosyncratic release policy." *Id.* The analyses of the Sentencing Commission, as represented in § 1B1.13 and its Application Notes, and the BOP Director should still be "given substantial weight," and "strik[ing] out on a different path risks an appellate holding that judicial discretion has been abused." *Id.*; *see also Jones*, 2020 WL 6817488, at *9 (quoting with approval a prior panel's observations that "'discretion' does not mean 'whim'" and "[a] court might abuse its discretion, for example, if it misreads the meaning of the extraordinary-reason requirement").

That statutory language, rather, requires that a defendant satisfy two strict criteria to be initially eligible for compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i). *First*, the defendant's reasons must be "extraordinary"— meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). *Second*, the defendant's reasons must be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold. Lawrence has not done so.

*First*, as an initial matter, the government agrees that Lawrence's obesity, defined by the CDC as a BMI of over 30, is recognized by the CDC as a risk factor.

There is some evidence that Lawrence has a BMI of 32.3, which could qualify as "extraordinary" because the CDC has confirmed obesity is a risk factor that places a person at increased risk of severe illness from Covid-19. *See* CDC Risk Factors (as updated). Given the heightened risk that Covid-19 poses to someone with obesity, Lawrence arguably has shown "extraordinary" reasons for release under § 3582(c)(1)(A).

*Second*, however, Lawrence's reasons for release are not "compelling." In the pretrial-release context, the Sixth Circuit has already addressed what qualifies as a "compelling" reason for release based on Covid-19. *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *Bothra*, 2020 WL 2611545, at *2. That analysis considers (1) the "original grounds" for the defendant's incarceration; (2) the "specificity" of his "stated Covid-19 concerns"; (3) the extent to which the proposed release plan would "mitigate or exacerbate" his risk from Covid-19; and (4) the risk from Covid-19 that his release would pose to others. *McGowan*, 2020 WL 3867515, at *2. In *Bothra*, for instance, the defendant was in his 70s and "had health issues rendering him more vulnerable to contracting [Covid-19]." 2020 WL 2611545, at *2. But he was a flight risk, had orchestrated a large and complex fraud scheme, and was detained at a facility that had very few cases of Covid-19. *Id.* The Sixth Circuit thus held that his circumstances did not present a "compelling" reason for release. *Id.*

Lawrence's circumstances are even less compelling. The "original grounds" for Lawrence's incarceration here were Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 1); Possession of a Firearm in Furtherance of a Controlled Substance Distribution Offense, in violation of 18 U.S.C. § 924(c) (Count 2); and Possession of Firearm and Ammunition by Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3). ECF No.15: Indictment, PageID.21. On January 4, 2018, Lawrence pleaded guilty to counts one and three. ECF No. 36: Rule 11 Plea Agreement, PageID.87. *McGowan*, 2020 WL 3867515, at *2. His conviction for that offense, especially when combined with his lengthy criminal record, showed that Lawrence required a sentence of 96 months in prison. It also showed that Lawrence is dangerous, as contemplated under USSG § 1B1.13(2), which should continue to "guide" the Court's analysis here. *Gunn*, 2020 WL 6813995, at *2. And unlike the pretrial defendant in *Bothra*, Lawrence was *convicted* of his offense here—not just accused of it. So the justice system's "essential" interest in finality weighs far stronger against Lawrence's release than it did the defendant's release in *Bothra*. *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Lawrence has also not demonstrated that his release would mitigate his risk of contracting Covid-19. Conditions at Elkton FCI have steadily improved, and Lawrence has already had asymptomatic Covid-19; his risk is low there. Moreover, Lawrence repeatedly violated the conditions of parole during the thirteen years he

was committing crimes and going in and out of custody. It is not a stretch to infer that Lawrence is unlikely to abide by a home-confinement order or social-distancing protocols.

**B. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.**

Even when an inmate has shown "extraordinary and compelling reasons," he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same). So even if the Court were to find that Lawrence established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

For starters, Lawrence's long remaining sentence weighs heavily against release. This Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F.

App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008. Lawrence is not due for release until 2024.

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant with many years left on his sentence, like Lawrence, must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.*

The relevant § 3553(a) factors, already addressed above, in previous briefings, and in the Court's order and sentencing findings, do not support release. Releasing only offenders who do not pose a danger to the public or present a significant risk of recidivism is especially important given the current strain on society's first responders and the rise in certain types of crime during the Covid-19 pandemic. Police departments in many cities have been stretched to their limits as officers have either contracted Covid-19 or been placed in quarantine. Some cities, including

Detroit, have seen spikes in shootings and murders. Child sex predators have taken advantage of bored school-aged kids spending more time online. Covid-19-based fraud schemes have proliferated. Drug overdoses are skyrocketing. There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of convicted defendants.

<strong>Conclusion</strong>

If the Court considers this a motion for reconsideration, it should be denied because Lawrence merely rehashed arguments the Court already has addressed. Neither has Lawrence demonstrated a palpable defect by which the Court and parties have been misled which, if corrected, would result in a different outcome.

If the Court considers this a third, substantive motion for compassionate release, the Court likewise should deny Lawrence's motion.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

s/*Julie A. Beck*
Julie A. Beck
Assistant United States
Attorney 211 W. Fort Street,
Suite 2001
Detroit, MI 48226
(313) 226-9717
julie.beck@usdoj.gov

Dated: December 19, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2020. I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system, which will

send notification to all counsel of record.

s/*Julie A. Beck*_____

Julie A. Beck
Assistant United States
Attorney 211 W. Fort
Street, Suite 2001
Detroit, MI 48226
(313) 226-9717
julie.beck@usdoj.gov
