IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 17-cr-20259 ) Honorable Victoria A. Roberts |
| JAMES LAWRENCE, | ) ) ) |
| Defendant. | ) |

**Reply Supplemental Brief in Support of Defendant James Lawrence's Motion to Reconsider, or Alternatively Second Renewed Motion For Compassionate Release and Request for Hearing**

**I.**

Whether the Court evaluates Mr. Lawrence's *pro se* filing as a Motion To Reconsider his request for Compassionate Release or a Second Renewed Motion, the merits of Mr. Lawrence's request warrant a reduction. Proceeding *pro se*, Mr. Lawrence filed a motion requesting the Court to reconsider the Order denying his Renewed Motion for Compassionate Release. Rule 7.1(g) of the Local Rules of the United States District Court for the Eastern District of Michigan allows a party to file a motion for reconsideration. See E.D. Mich. LR 7.1(g). Rule 7.1(g)(3) provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled" and (2) show that "correcting the

defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest or plain. *Mktg. Displays, Inc. v. Traffix Devices, Inc.*, 971 F.Supp. 262, 278 (E.D. Mich. 1997) (citing Webster's New World Dictionary 974 (3d ed.1988)). A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. See E.D. Mich. LR 7.1(g)(3).

At first blush, the government's argument concerning his Motion to Reconsider, appears to win the day. However, the ruling by the Sixth Circuit in *United States v. Jones*, was a fortuitous event that has inured to the benefit of Mr. Lawrence. Critically, the guideline policy that many courts considered in evaluating an individual's motion for compassionate release, no longer bind the court. Rather, judges "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id*. at *9. Additionally, "[a]bsent thorough record evidence of the judge's factual decisions, district courts should not issue single-sentence or otherwise exceedingly slim compassionate release decisions or cite § 1B1.13 or the § 3553(a) factors without any analysis of their requirements." *Jones*, 2020 WL 6817488, at *11.

Hence the "palpable defect" which was not obvious at the time of the Court's decision, is clear now that *Jones* has provided clarity. Mr. Lawrence has presented additional cases that the Court did not have the benefit of when evaluating the merits of Mr. Lawrence's Renewed Motion for Compassionate Release, he has supplemented the record to assist the

Court with evaluating the 3553(a) factors, and *Jones* provides a clear framework in which to analyze the merits of Mr. Lawrence's request for a reduced sentence. Accordingly, Mr. Lawrence believes that after the Court has had the opportunity to evaluate his motion under the clarified framework, the Court will arrive at a "different disposition" and grant his request for a Motion to Reconsider or alternatively, his second renewed motion.

The government points to 61 cases in which district courts in the Eastern District have denied Motions for Compassionate Release where a BMI over 30 was a factor, however, these cases were decided without the clarity of *Jones*. Therefore, they are not binding on the Court and it is free to consider what constitutes extraordinary and compelling. Mr. Lawrence has more fully developed the record with respect to his BMI by providing cases where district courts in the Eastern District -albeit few-have granted compassionate release for this medical vulnerability alone. Moreover, he has expanded the record with letters of overwhelming support from his community, friends, and family to allay any concerns of danger, should the Court release him. In sum, the expansion of the record has addressed the concerns noted by the Court in its Order denying Mr. Lawrence's Renewed Motion and he respectfully urges the Court grant his motion. *See United States v. Smith,* 14-cr-20814, ECF No. 59 (E.D. Mich. Nov. 20, 2020) (granting renewed motion for compassionate release after Mr. Smith found suitable living conditions and concerns of sentencing disparity were addressed); *see, e.g., United States v. Oltmanns,* 09-CR-1016-CJW-MAR, ECF 87 (N.D. Iowa Dec. 11, 2020) (reconsidering and granting based on

updated information on defendant's health, changes in the CDC's guidance, and the continuing spread of COVID-19 at FCI Pekin; health risks now outweigh recidivism risks under 3553(a)); *United States v. Bradford*, 00-cr-00198-EEF (E.D. Louisiana July 2, 2020) (reconsidering and granting motion after denial based on dangerousness and 3553(a) grounds); *United States v. Calabrese*, 2020 WL 3316139 (D. Mass. June 18, 2020) (reconsidering and granting motion based on worsening conditions at FMC Lexington).

The Bureau of Prisons reported at least 970 cumulative cases at Elkton, including 25 active infections; 22 among staff and three among inmates.[1] FCI Elkton has the third-highest number of cumulative cases in the federal prison system, behind facilities in Seagoville and Beaumont, Texas. It also has the fourth-highest number of total deaths. Mr. Lawrence continues to be exposed to the coronavirus as Elkton is not conducting mass testing. Given his inability to control one's own surroundings, a second positive test may result in serious injury and or death. Fortunately, Mr. Lawrence was able to survive his first diagnosis with COVID-19. However, the damage COVID-19 may have inflicted upon Mr. Lawrence's body, specifically his organs is unknown at this point in time. As this virus continues to wreak havoc, a new strain of the virus that is highly transmissible has been identified in the United States. https://www.usatoday.com/story/news/nation/2020/12/30/coronavirus-variant-colorado-unlikely-first-case-us/4085694001/. If Mr. Lawrence were to contract COVID-19 again,

---

[1] https://www.bop.gov/coronavirus/(last accessed Dec. 30, 2020)

along with his underlying health condition, and his inability to adequately protect himself at Elkton, he faces the potential of an extreme case that may lead to serious injury or death.

For all of the reasons stated, Mr. Lawrence respectfully requests the Court to release him to a term of home confinement with any conditions the Court deems necessary.

Dated:  December 30, 2020

        Respectfully submitted,

        /s/ Natasha Webster
        NATASHA WEBSTER
        Federal Community Defender
        613 Abbott Street, Suite 500
        Detroit, MI 48226
        Telephone: (313) 976-5847
        E-mail: Natasha _Webster@fd.org

        ATTORNEY FOR MR. LAWRENCE

## Certificate of Service

I hereby certify that on December 30, 2020 the foregoing was filed electronically with the Clerk of the Court to be served via ECF upon Julie Beck, Assistant United States Attorney.

        /s/Natasha Webster
        NATASHA WEBSTER
        Deputy Defender